874 A.2d 457

**Joseph David BRYANT**

v.

**HOWARD COUNTY DEPARTMENT OF SOCIAL SERVICES ex rel. Cassandra COSTLEY.**

**No. 93, Sept. Term, 2004.**

Court of Appeals of Maryland.

May 12, 2005.

Julia Doyle Bernhardt, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for appellant.

Barbara T. Strong, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Argued before BELL, C.J., RAKER, WILNER, HARRELL, BATTAGLIA, GREENE and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

WILNER, J.

The ability of a court to enforce child support orders entered by it is often difficult and frustrating. In many cases, the court must invoke, as a last resort, its power to punish a wilfully non-compliant parent for contempt, but when the exercise of that power involves incarceration—deprivation of the parent's liberty—it is subject to certain circumscribing conditions and limitations. In 1997, through the adoption of Maryland Rules 15–201 through 15–208, we tried to set out criteria for the proper exercise of the power of contempt, in both its coercive and punitive aspects. In this case, the court did not follow the requirements and, as a result, it entered an order that we shall be obliged to vacate.

## BACKGROUND

Jasmine B. was born out of wedlock in December, 1993. In November, 1996, the Howard County Department of Social Services (DSS), which was then paying public assistance to her mother, Ms. Costley, filed a petition in the Circuit Court for

Howard County to declare appellant to be Jasmine's father and to order him and Ms. Costley to pay child support. Though she was the custodial parent, Ms. Costley was made a defendant because she refused to sign an oath naming the child's father. *See* Maryland Code, § 5–1010(d)(3)(ii) of the Family . Law Article. After a hearing before a domestic relations master, during which appellant acknowledged paternity, the court, on February 24, 1997, entered an order that, among other things, declared appellant to be Jasmine's father and ordered him to pay child support in the guideline amount of $189/month plus an additional $20/month against an arrearage of $569.

Appellant paid little attention to that order and, by July, 1998, had increased his arrearage to $3,306. When faced with the possible loss of his driver's license as a result of that arrearage, he entered into a stipulation and payment agreement, under which he agreed to resume monthly child support of $189 and to pay, in addition, $92/month toward the arrearage. That stipulation was incorporated into a court order entered on August 4, 1998.

Appellant was as non-compliant with that order as with the first one. By December, 2001, his arrearage stood at $11,181, and DSS petitioned to have him held in contempt. The petition, though captioned and filed in the civil paternity proceeding, asked, as the only sanction for contempt, that appellant be "sentenced to a period of incarceration not to exceed [180] days," without regard to any provision for purging the contempt, which is a criminal penalty not available in a civil contempt proceeding.[1] After a hearing, the domestic relations master ordered appellant to participate in the Absent Parent Employment Program and the court entered an order to that effect on February 28, 2002. That order required appellant to report to the program on a weekly basis, com-

---

1. Notwithstanding its request for a criminal sanction, the petition must be regarded as one for civil contempt. Apart from the fact that it was filed in the civil proceeding, DSS has no authority to file a petition for criminal contempt. *Compare* Maryland Rules 15–205(b) and 15–206(b).

mencing March 11, 2002, and to accept any employment obtainable under the program. If no employment was so obtainable, appellant was ordered to conduct a minimum of eight job contacts per week and to continue reporting to the program until released. After a subsequent hearing before the master on April 26, the court, on May 12, 2002, ordered appellant to continue monthly support payments of $189 and to pay an additional $47/month toward an arrearage that then amounted to $11,685. Resolution of the contempt issue was deferred until June 3, 2002.

Because appellant arrived late, the master was unable to proceed with the hearing on June 3, and instead scheduled a hearing before a judge on June 27, 2002. Appellant was advised in writing that, if he desired counsel, he should contact the Office of the Public Defender by June 12, 2002. Appellant did not heed that advice and showed up in court on June 27 without counsel. He said that he intended to retain private counsel but, by the time he realized he could not afford a private attorney, the June 12 deadline had passed. The court was obviously not impressed, found no meritorious reason, and therefore proceeded with the hearing.

Appellant did not contest the arrearage or seek to have either the arrearage or the amount of support reduced. From what he said and from what he implied, it was evident that he had a history of drug abuse, that he had been incarcerated a number of times, including for distribution, and that he had been in various recovery programs, trying to get his life in order. The transcript reveals that, at times, he was crying during his testimony. He said that he had tried to obtain employment but that, with his criminal record, he had difficulty finding a job. He informed the court that he had recently managed to get two jobs, at least one of which was temporary, and, although he did not seem to know much about the jobs, he said that he was to be paid, from each, about $8/hour. Appellant said that Jasmine and her mother then lived in Georgia, and that when the mother indicated that she needed something for the child, he tried to supply it, although he understood that voluntary gifts or payments did not discharge

his child support obligation. Appellant advised the court that he was then on probation in another case in the Circuit Court.

DSS noted that appellant had been employed and had earned over $6,000 in 2001, but that he had made no payment toward his child support. Appellant responded that he was homeless in 2001 and had spent his earnings on hotel rooms and for food for his two other children.

On June 27, 2002, the court entered an Order for Probation that referenced the same case number as the paternity action but was captioned "*State of Maryland v. Joseph Bryant.*" No such case or file existed and none was created as a result of that order. The order stated that the "execution of the sentence of [blank] has been suspended for the offense of . . . contempt." It purported to place appellant on "Supervised Probation" for a period of 18 months, effective June 27, 2002, and, in addition to the conditions usually found in probation orders entered in criminal cases, including reporting to his probation agent as directed and informing the agent of any subsequent arrest, made reference to an addendum. That addendum, which also referenced the paternity action case number, required that appellant pay all "fines, costs, restitution, and fees as ordered by the court," totally abstain from alcohol and drugs, submit to alcohol and drug testing, attend NA self-help group meetings, and "obtain sponsor + home group w/in 30 days + maintain." [2] The Order is signed by appellant but is not dated or witnessed. The addendum is not signed by appellant; indeed, the pre-printed "Consent" paragraph is lined out.

The next day, the court entered another order, in the paternity case, that was captioned "Order For Constructive Civil Contempt." Among other things, the court, in that

---

2. The last-noted directive was included in the order by handwritten interlineation. In remarks from the Bench, the court told appellant that he was "to attend NA as directed, and you're to obtain a sponsor and a home group at NA within 30 days of this order and maintain it." Because it is the written order, rather than the court's often untranscribed remarks, that constitutes the effective requirement, the order should have been more clear just what appellant was directed to do.

order, (1) declared a current arrearage of $12,189, (2) found appellant to be in contempt of the May 12, 2002 order, (3) "sentenced" appellant to 180 days incarceration in the Howard County Detention Center, (4) suspended all but 30 days of that "sentence," (5) directed that appellant report to the county sheriff on August 30, 2002, to begin serving the unsuspended 30 days of the sentence, (6) decreed that, upon payment to DSS of "a purge amount" of $1,000 on or before August 29, 2002, appellant would be released from service of that part of the sentence, (7) declared that service of the remaining 150 days of the "sentence" was suspended on condition that appellant pay DSS $189/month child support and $47/month against the arrearage, and that, upon payment in full of the arrearage, the contempt would be purged, and (8) directed that appellant comply with "all of the conditions specified in the attached addendum to this Order." One problem with that last, eighth, provision, apparently unnoticed by anyone, is that there was no addendum attached to the June 28 order. There was an addendum attached to the June 27 Order for Probation, but neither that addendum nor the June 27 Order of Probation was attached to the June 28 Order for Constructive Civil Contempt. No appeal was noted from either order.

On September 16, 2002, the Division of Parole and Probation, which assumed supervision of appellant pursuant to the June 27 order, filed a Request for a Warrant in the Circuit Court, alleging that the defendant had violated three conditions of probation by failing to report to his probation officer as instructed, failing to report for drug testing 11 times, and failing to provide proof of attendance at self-help meetings or acquisition of a home group or sponsor. Two days later, the Circuit Court judge entered an order, in the paternity case, directing the issuance of a bench warrant for appellant's arrest and setting a full cash bond of $10,000. It was not until July, 2003, that the county sheriff was able to locate appellant, however. He had been arrested in Anne Arundel County on two charges of possession of CDS paraphernalia and an additional charge of making a false statement to a police officer and was being held in the Anne Arundel County Detention

Center. On July 8, appellant was transferred to the Howard County Detention Center.[3]

On August 7, 2003, the Division of Parole and Probation, responding to the arrest in Anne Arundel County, added two more alleged violations of the probation—appellant's failure to obey all laws and failure to advise his probation officer of his arrest. The court then, on August 7, 2003, entered an order in the paternity case but showing the docket number of that case as "Criminal No.," directing appellant to show cause why he should not be held in contempt of the June 27, 2002 order. With the assistance of the Public Defender, appellant moved to dismiss the pending contempt proceedings on the ground that the case was one of alleged civil contempt and that none of the alleged violations constituted a proper contempt allegation in a civil non-support case. Relying on *Rawlings v. Rawlings*, 362 Md. 535, 766 A.2d 98 (2001) and Maryland Rule 15–207, appellant maintained that the conditions set forth in the June 27 Order for Probation, which he allegedly violated, were not proper conditions in a civil child support case. In argument on his motion, he added that "[n]one of the alleged violations has anything to do with a failure to pay child support, failure to be employed, or failure to seek employment" and that the court had no authority to impose those conditions in a civil non-support contempt case. Appellant, personally, filed a separate response, in which he contended that his girlfriend had notified the probation officer of his arrest and that he had not been convicted of any of the Anne Arundel County offenses.

Although the current proceeding had been triggered by a report and request for a warrant filed by the Division of Parole and Probation, the response to the Public Defender's motion came from DSS, which looked not to the June 27 Order for Probation but to the June 28 Order for Constructive Civil

---

3. It is not entirely clear whether appellant's detention in the Howard County Detention Center was pursuant to the warrant issued in this case or one issued in the separate criminal case, in which appellant was also on probation.

Contempt. It contended that the alleged violations were of *that* order and constituted a contempt separate from the failure to pay child support. DSS did not respond to appellant's *pro se* filing.

The court held a brief hearing on September 12, 2003, at which, in addition to some amplification of the legal arguments, the court was advised that appellant had no money and that he had been incarcerated since July 8, both in this case and pursuant to a violation of probation charge in the separate criminal case in Howard County. On October 9, 2003, the court entered another Order for Constructive Civil Contempt in which it (1) found appellant to be in contempt of the June 28, 2002 order, (2) directed that appellant not be further incarcerated, (3) terminated the conditions specified in the "addendum to the Order for Constructive Civil Contempt dated June 28, 2002," (3) declared that "the remaining conditions of the aforementioned order for Constructive Civil Contempt ... remain in full force and effect," and (4) ordered that appellant inform DSS, in writing and within 10 days, of any change in his address. The court had explained at the hearing that the point of the drug testing and self-help conditions, upon which the finding of contempt was based, was "to assist [appellant] in his effort to remain drug free, and most importantly, the goal was to keep him employed so that he could continue to pay child support." Appellant was ultimately released from incarceration on October 23, 2003.

Appellant noted an appeal from the October 9 order, and we granted *certiorari* on our own initiative prior to any substantive proceedings in the Court of Special Appeals.

## DISCUSSION

### What Is Before Us

Before addressing the substantive issues raised by the parties, it is important to define what is actually before us and whether it is properly before us. As we read the record, the Circuit Court has abrogated, prospectively, all of the conditions to the probation enunciated in the June 27 Order for

Probation and the addendum that was attached to it, including the drug testing and self-help requirements. The only conditions that remain in effect are those included in the June 28 Order for Constructive Civil Contempt, and even those conditions were substantially modified. The June 28, 2002 Order for Constructive Civil Contempt, as noted, "sentenced" appellant to 180 days in jail, suspended all but 30 days, directed that appellant report to the sheriff to serve those 30 days on August 30, 2002, unless he paid a purge amount of $1,000 prior to that date, and directed that appellant would be released from serving the suspended 150 days if he paid $189/month child support and $47/month on the then-existing arrearage.

In declaring, in its October 9, 2003 order, that "no further incarceration of [appellant] is ordered," the court effectively abrogated the "sentence" imposed in the June 28 order and any prospect that appellant will have to serve any part of that sentence. Only two things thus remain. First, even though it abrogated those conditions prospectively as well as any prospect of enforcing them through incarceration, the court purported to hold appellant in contempt for failing, prior to October 9, 2003, to undergo drug testing and to attend NA self-help meetings, as directed in the addendum to the June 27 order. Because, in announcing that finding of contempt, the court referred to the non-existent addendum to the June 28 order, it is not clear that its finding of contempt was effective, even if valid, but, as the court's intent seems clear and appellant has not raised that as an issue, we shall, for purposes of this appeal, treat the finding of contempt based on those two conditions as at least facially effective. The second directive that remains in effect is the renewal of the order that appellant pay the $189/month child support and the $47/month on the arrearage.

It does not appear that appellant is challenging the second aspect of the October 9 order. As noted, he has never complained about either the setting of the child support or the arrearage. The only issue he has raised, therefore, is whether the court had authority, in June, 2002, to impose the two

conditions on which the October 9, 2003, finding of contempt was based.

### Appealability/Mootness

The State's initial response to that issue is that the appeal should be dismissed. It urges, first, that as appellant has never been incarcerated or otherwise sanctioned and, as matters now stand, cannot be incarcerated, there is no appealable judgment. Apart from the declaration of "no incarceration," the 18–month period of probation ordered in June, 2002, to which the two conditions were attached, has expired, which, in the State's view, renders the issue raised by appellant moot. The State also views the June 27 order as a consent order, from which no appeal is permissible in any event. Finally, it argues that the two conditions were permissible and that a finding of contempt for their wilful violation was valid.

Appellant views the two conditions as jurisdictionally deficient, permitting him to challenge them at any time. Though tacitly recognizing that any argument regarding possible future incarceration may be moot, he urges, without any documentation, that the approach taken in his case, of attaching drug testing and rehabilitation conditions to a probation that, in his view, have nothing to do with his paying child support, is commonly used by the Circuit Court for Howard County, that the issue will arise again, and that the Circuit Court needs to be instructed that it may not use that approach.

The question, then, is whether the appeal is a permissible and sustainable one, namely, whether the appeal is from a non-appealable consent order, whether an appeal lies from a contempt finding that is unaccompanied by any sanction, and whether, even if the order was initially appealable, the issue raised by appellant—the validity of the finding of contempt based on non-compliance with the drug testing and rehabilitation requirements—has since become moot.

The October 9, 2003 order that embodied the finding of contempt was approved by appellant's counsel as to *form,* but it certainly was not consented to by either counsel or

appellant. The two conditions at issue—drug testing and attending NA self-help meetings—emanated from the addendum that was attached to the June 27 Order for Probation, to which appellant, uncounseled at the time, did consent and from which he did not appeal. Although it is true that, ordinarily, a party may not appeal from a judgment to which he/she consented—*see Franzen v. Dubinok*, 290 Md. 65, 68, 427 A.2d 1002, 1004 (1981), *Mercantile Trust Co. v. Schloss*, 165 Md. 18, 24, 166 A. 599, 601–02 (1933)—it is also clear that a party may not validly consent to a criminal sentence that is unlawful. *See Holmes v. State*, 362 Md. 190, 195–96, 763 A.2d 737, 740 (2000) and cases cited there. If, as urged by appellant, the conditions at issue were, when first imposed, in the nature of criminal sanctions and, as such, not permissible in a civil contempt proceeding, they would, indeed, constitute an unlawful criminal sentence to which no consent could be valid. The consent issue thus hinges on the substantive one.

As to whether an appeal may be taken from a finding of contempt unaccompanied by any sanction, the law generally, and the jurisprudence of this Court in particular, have shifted. In *Kelly v. Montebello Park Co.*, 141 Md. 194, 196, 118 A. 600, 601 (1922), this Court observed that, at common law, a court of competent jurisdiction was the sole judge of contempts against its authority and dignity and that its judgment in such cases was final, conclusive, and not reviewable in any other tribunal unless such review was authorized by statute. The Court at least suggested, however, that the unreviewability of contempt orders in Maryland, in the absence of a statute, was limited to findings of *criminal* contempt, which was the nature of the order then before the Court. That view was confirmed in *Ex Parte Sturm*, 152 Md. 114, 124–26, 136 A. 312, 316 (1927) (holding, in absence of statute, order of criminal contempt not appealable). At its next session, the General Assembly, by 1927 Md. Laws, ch. 593, added to the list of equity orders from which appeals may be taken, "an order remedial in its nature adjudging in contempt of Court any party to a cause or any person not a party thereto (except orders passed requiring the payment of alimony)."

In *International Pocketbook Workers' v. Orlove*, 158 Md. 496, 148 A. 826 (1930), the Circuit Court had entered a preliminary injunction in a labor dispute, enjoining the defendants from picketing and engaging in certain other concerted activity. The court thereafter made the injunctions permanent and also found the defendants in contempt for violating the preliminary injunction. Because it found the violations not to be intentional, however, it imposed no punishment. This Court entertained an appeal from the injunctions, which were vacated as being too broad, but dismissed an appeal from the contempt orders on the ground that, even under the statute, the right of appeal "supposes the existence of some injury from the orders to be redressed by appeal." *Id.* at 505, 148 A. at 829. Because no punishment had been imposed on the contempt, the Court did not regard the defendants as having been injured. In *Mitchell v. Mitchell*, 61 Md.App. 535, 487 A.2d 680 (1985), the Court of Special Appeals followed that approach, as it was required to do, and dismissed an appeal from a finding of contempt devoid of any punishment.

A facially similar ruling was made in *Director of Fin., Prince George's Co. v. Cole*, 296 Md. 607, 465 A.2d 450 (1983), although the actual basis for that ruling was not entirely the same as in *Intern'l Pocketbook Workers*, which was not cited by the Court. In November, 1980, the District Court ordered the Director of Finance of Prince George's County to return money that had been seized in a gambling raid. The order was never served on the Director, who also had not been notified of the motion seeking the return of the money and was not in court when the order was issued. Nonetheless, on April 2, 1981, the court orally held the Director in contempt of court for failing to return the money. No sanction or purge was mentioned in the oral ruling. That same day, the Director noted an appeal from the oral finding of contempt. The next day, the court entered a written order of contempt that did contain a sanction and purge provision, but no appeal was taken from that order. This Court dismissed the Director's appeal from the oral ruling on the ground that it was premature, as not being from a final judgment in the matter. In

explaining why the appeal was premature, the Court noted that the oral ruling, which contained no sanction or purge provision, did "not constitute a contempt order from which an appeal may properly be taken." *Id.* at 613, 465 A.2d at 454.

The heart of the decision was that the oral ruling on April 2 was not intended to be a final disposition of the matter, as evidenced by the fact that, in failing to provide for a sanction and purge, it was not a complete recitation of the court's ultimate ruling. The court obviously understood that a sanction and purge were necessary if the contempt finding was to be effective and enforceable, as those provisions were included in the written order filed the next day. The oral ruling was nothing more than a preliminary announcement of a partial decision, from which no appeal will lie.

The 1927 statute was substantively rewritten in 1957 (*See* 1957 Md. Laws. ch. 399, § 4) and now appears as Maryland Code, § 12–304(a) of the Cts. & Jud. Proc. Article. It provides, subject to the exception for a contempt based on the violation of an interlocutory order for the payment of alimony, that "[a]ny person may appeal from any order or judgment passed to preserve the power or vindicate the dignity of the court and adjudging him in contempt of court." It is no longer part of a statute dealing just with equity orders and on its face, plainly applies to both criminal and civil contempts, so the distinction in that regard seemingly drawn in *Kelly* and *Sturm* no longer would be valid. The only issue is whether the view expressed in *Intern'l Pocketbook Workers* and *Mitchell* still pertains—that a condition to appealability under the statute is the existence of some injury and that a mere finding of contempt devoid of any punishment does not suffice.

That view, we think, was modified in *Lynch v. Lynch,* 342 Md. 509, 677 A.2d 584 (1996). In *Lynch,* the defendant was found in civil contempt for failure to pay child support. The court sentenced her to 20 days in the detention center but provided that the contempt could be purged by the payment of $500. The Court of Special Appeals affirmed the finding of contempt but, after concluding that the evidence was legally

insufficient to show that she had the ability to purge the contempt, vacated the sanction. This Court went further and held that, absent a showing that the defendant could, in fact, meet a purge, no finding of contempt was permissible. That aspect of the decision has been overturned, in non-support cases, by the subsequent adoption of Maryland Rule 15–207(e). *See* Committee Note to Rule 15–207; *Rawlings v. Rawlings, supra,* 362 Md. at 552–53, 766 A.2d at 107–08. The part of the decision that remains extant and enduring, however, is the further conclusion that "a finding of contempt, where there is no possibility of enforcing compliance with the court order to which it relates, simply labels the defendant a contemnor and imputes guilt to him or her. *That is a form of punishment.*" *Id.* at 529, 677 A.2d at 594 (emphasis added).

That conclusion is entirely valid. A finding of contempt, even without the immediate imposition of punishment or sanction, leaves the defendant adjudged to have wilfully violated a court order and may well leave the defendant subject to future punishment at the will of the court. The adjudication itself is and will remain a matter of public record, readily accessible, and may well affect the defendant's ability to obtain employment, licenses of one kind or another, housing, insurance, or other benefits or opportunities. *See Williams v. Williams,* 63 Md.App. 220, 226, 492 A.2d 649, 651 (1985), *aff'd,* 305 Md. 1, 501 A.2d 432 (1985). Even if we were not to regard that as punishment, the plain wording and a common sense reading of § 12–304 indicate an intent to permit an appeal from the adjudication of contempt itself, without regard to whether an immediate sanction is imposed. The appeal is allowed from "*any order* or judgment passed to preserve the power or vindicate the dignity of the court and adjudging him in contempt of court." Maryland Code, § 12–304(a) of the Cts. & Jud. Proc. Article (emphasis added). The statute does not require that the order be accompanied by an immediate sanction. For those reasons, we hold that the October 9, 2003 order was appealable, and for the same reasons, we conclude that the appeal is not moot. The adjudication of contempt remains on the record.

### Validity of the Contempt Finding

In *State v. Roll and Scholl,* 267 Md. 714, 298 A.2d 867 (1973), we observed that the contempt power was an ancient one and that its modern-day application was often misunderstood. In an effort to set forth some basic ground rules, we noted that there was a form of grid into which contempt proceedings might fall: contempt could be criminal or civil and it could be direct or constructive, leaving the prospect of a direct criminal contempt, a direct civil contempt, a constructive criminal contempt, and a constructive civil contempt. The alleged contempt here was clearly constructive, rather than direct, so we need not dwell on the distinctions between those two forms and may, instead, look only at the civil and criminal varieties.

In an attempt to define some boundaries, we observed in *Roll and Scholl* that a civil contempt is intended to preserve and enforce the rights of private parties to an action and to compel obedience to orders entered primarily for their benefit. Civil contempt proceedings are therefore remedial and coercive in nature. They are intended not to punish for past misconduct inflicted against the court but to force present or future compliance with the court's orders. Thus, a penalty for civil contempt, if it is to be coercive rather than punitive, must provide for purging; it must permit the defendant to avoid the penalty by some specific conduct that is within the defendant's ability to perform. Criminal contempt, on the other hand, is punitive, not coercive, in nature. It is precisely to punish past disobedience and therefore does not require a purging provision.

We recognized in *Roll and Scholl* that the line between civil and criminal contempt was "frequently hazy and indistinct," and that there remained the confusing prospect of conduct embracing aspects of both kinds. *See id.* at 728, 298 A.2d at 876. Apart from occasional ambiguity in pigeonholing past misconduct, there are also situations, which frequently arise in the context of enforcing support orders, in which the court desires to achieve both objectives, of punishing past miscon-

duct through criminal contempt and enforcing compliance in the future through a coercive civil contempt order.

■ In 1997, we attempted to bring some greater procedural clarity to the exercise of the contempt power, particularly in support enforcement cases, through a rewriting of the Rules governing contempt proceedings. In Rule 15–205, we directed that a proceeding for constructive criminal contempt be docketed as a separate criminal action and that it not be included in the action in which the contempt occurred. Because the action is a criminal one, it may be initiated only by the court, a State's Attorney, the Attorney General, or the State Prosecutor, and if the court initiates the action, it may, and should, appoint one of those officials to prosecute it, so that the court is not acting as both prosecutor and judge in the same case. *See* Maryland Rule 15–205(b) and (c). If the case is in a circuit court and there is the prospect of *any* imprisonment, the defendant is entitled to a jury trial, and that right can be waived only in conformance with Maryland Rule 4–246. *See* Maryland Rule 15–205(f); *Ashford v. State,* 358 Md. 552, 567, 750 A.2d 35, 43 (2000); *Dorsey v. State,* 356 Md. 324, 342, 739 A.2d 41, 51 (1999). In a constructive criminal contempt case, the prosecution "has the burden of proving, beyond a reasonable doubt, 'a deliberate effort or a wilful act of commission or omission by the alleged contemnor committed with the knowledge that it would frustrate the order of the court.' " *Dorsey v. State, supra,* 356 Md. at 352, 739 A.2d at 56 (quoting *In re Ann M.,* 309 Md. 564, 569, 525 A.2d 1054, 1056 (1987)).

■ In contrast, Rule 15–206 directs that a proceeding for constructive civil contempt be filed in the action in which the contempt occurred, that any party to that action may initiate the proceeding, and that, in a support enforcement case where the contempt is based on failure to pay child or spousal support, an agency authorized by law may bring the action. The standard of proof is clear and convincing evidence, not evidence beyond a reasonable doubt. Maryland Rule 15–207(e)(2). A defendant in a constructive civil contempt action is not entitled to a jury trial. *Dodson v. Dodson,* 380 Md. 438,

453, 845 A.2d 1194, 1202 (2004); *Harryman v. State,* 359 Md. 492, 508–09, 754 A.2d 1018, 1027 (2000).

 It is evident, just from these distinctions, that criminal and civil contempt actions are entirely separate, in their origin, in their objectives, and in their method of adjudication. In the context of enforcing support orders, however, this Court, through the adoption of Maryland Rule 15–207(e), attempted to create a method by which both kinds of proceedings could be used in a way that was functional and practical and that yet adhered to appropriate legal constraints. Overturning the contrary holding in *Lynch v. Lynch, supra,* the Rule permits a finding of contempt upon proof that the defendant did not pay the amount owed, accounting from the date of the support order through the date of the contempt hearing, unless the defendant establishes either (1) that limitations has run, or (2) that, during that period, the defendant never had the ability to pay more than was actually paid and that he/she made reasonable efforts to become or remain employed or otherwise lawfully obtain the funds necessary to make additional payments. A finding of constructive civil contempt in non-support cases is not precluded simply because the defendant cannot meet a purge on the day of the hearing or order. *Rawlings v. Rawlings, supra,* 362 Md. at 553, 766 A.2d at 107–08.

Under the Rule, however, the finding of contempt in non-support cases is not the toothless gesture it was thought to be when *Lynch* was decided. In adopting the Rule, we recognized that, in many cases, the problem lay in the fact that the defendant was impecunious because he/she was not employed and had not actively and in good faith sought employment. Although in a civil contempt case, the defendant's state of penury precludes a punitive sanction, such as incarceration, that the defendant has no ability to avoid by payment of money, the Rule authorizes the court, in consequence of the finding of contempt—the past wilful disobedience—to enter other kinds of coercive directives reasonably designed to

produce an income from which the required support could be paid. Rule 15–207(e)(4) thus provides:

"If the contemnor does not have the present ability to purge the contempt, the order may include directions that the contemnor make specified payments on the arrearage at future times *and perform specified acts to enable the contemnor to comply with the direction to make payments.*"

(Emphasis added).

A Committee Note to that provision explains:

"If the contemnor does not have the present ability to purge the contempt, *an example* of a direction to perform specified acts that a court may include under subsection (e)(4) is a provision that an unemployed, able-bodied contemnor look for work and periodically provide evidence of the efforts made. If the contemnor fails, without just cause, to comply with any provision of the order, a *criminal* contempt proceeding may be brought based on a violation of that provision."

(Emphasis added).

The thrust of Rule 15–207(e)(4), with the gloss of the Committee Note, is that, where the contemnor's inability to comply with the support order is his/her lack of gainful employment or other access to available funds, the court may address that problem directly by ordering the contemnor to take reasonable steps to obtain such employment or access and, if warranted, enforcing those directives through criminal contempt proceedings. The court obviously has some flexibility in deciding what directives to issue. The contemnor may be in need of employment counseling or training, and, if those services are available to the contemnor at a cost he/she can afford, the court may order the contemnor to take advantage of them. If there are other impediments to employment or access that can be remedied, the court may order the contemnor to take lawful and reasonable steps to deal with those impediments. That is what the domestic relations master attempted to do in February, 2002. There are, of course, limits on how far a court may go in this regard; it cannot

order things that are either inherently punitive in nature or that are so onerous, impractical, or unrelated to the objective of enabling the defendant to meet his/her obligation as to become punitive. Subject to that constraint, however, the court is not required to give the contemnor a free ride on unemployment and impoverishment, to the detriment of his/her children.

■ The Rule expressly permits those kinds of remedial orders to be enforced through criminal contempt proceedings, but it does not preclude their enforcement through civil contempt proceedings as well. The Rule permits both civil and criminal contempt proceedings to be brought against an alleged contemnor and to be consolidated for hearing and disposition. What the rules do *not* permit, however, is for the two to become merged or for the court, in a civil contempt case, to apply sanctions that are available only in a criminal contempt case. There can be no combined charging document, nor can a civil contempt proceeding be converted, midstream, to a criminal one. *Dorsey v. State, supra,* 356 Md. at 350, 739 A.2d at 55.

■ That, essentially, was the problem here. This case began as, and it always remained, a civil contempt proceeding. There was never a criminal contempt petition filed against appellant. Every pleading, motion, and order, from beginning to end, referenced and was filed in the paternity action. The orders entered by the court on June 27 and 28, 2002, however, when read together, were clearly in the nature of a criminal sentence. As we have observed, the June 28 "Order For Constructive Civil Contempt" imposed a finite 180 day "sentence" of incarceration on appellant, of which 150 days was suspended. Appellant was ordered to report to the sheriff to serve the remaining 30 days unless, prior to the day he was to report, he paid $1,000 to DSS, but there was no evidence before the court from which any finding could be made that appellant would be able to pay that $1,000 by that time.[4]

---

4. The only evidence bearing on appellant's ability to meet that purge was that he was currently earning $8/hour from employment and that

The June 27 Order for Probation was not only captioned "*State of Maryland v. Joseph Bryant,*" in clear distinction to the civil caption of "*Howard County Department of Social Services v. Joseph David Bryant,*" but, especially when coupled with the addendum to it, was criminal in its form and substance. It placed appellant under the supervision of the Division of Parole and Probation, a unit within the Department of Public Safety and Correctional Services responsible for supervising persons who have been placed on probation after conviction of a crime. *See* Maryland Code, § 6–111 of the Correctional Services Article. The general conditions listed in that order were those peculiar to probation entered as part of a criminal sentence—report to probation agent and follow his/her lawful instructions, get agent's permission before changing job or address, notify agent if probationer is arrested, permit agent to visit probationer's home. The addendum had similar criminally-oriented provisions—pay all fines, restitution, and fees ordered by the court, totally abstain from alcohol or drugs, attend NA meetings, participate in self-help activities, and submit to alcohol and drug testing.

Those kinds of directives go well beyond what is permissible under Rule 15–207(e)(4), as they are not only quintessentially criminal in nature but have only the most strained and tenuous connection with forcing appellant to obtain employment, which he already had, and resuming his child support payments. They constituted an unlawful criminal sentence imposed in a civil contempt proceeding and were therefore invalid. Because they were invalid, they could not serve as a

---

he had two other children to support. The court gave him nine weeks to accumulate $1,000. If he worked 40 hours a week during those nine weeks, his *gross* earnings, without any deductions, would have been $2,880. There was no evidence as to what his net earnings would have been, whether he could, in fact, have worked a 40–hour week if he was also required to report to his probation officer and undergo drug testing, or what would have been required to defray his reasonable living expenses. The assumption that he could accumulate $1,000 during that period was sheer speculation which, in *Thrower v. Bureau of Support Enforcement,* 358 Md. 146, 747 A.2d 634 (2000), we made clear was impermissible. *See also Rawlings v. Rawlings, supra,* 362 Md. at 571–72, 766 A.2d at 118.

lawful basis for the finding of contempt on October 9, 2003. The Order for Constructive Civil Contempt filed on October 9, 2003, must be vacated. Our vacation of that Order does not, of course, affect in any way appellant's on-going obligation to pay the child support and payments on the arrearage that previously had been established and ordered.

**ORDER FOR CONSTRUCTIVE CIVIL CONTEMPT ENTERED BY CIRCUIT COURT FOR HOWARD COUNTY AND FILED OCTOBER 9, 2003, VACATED; COSTS TO BE PAID BY APPELLEE.**