989 A.2d 1139

Rafael FLANAGAN

v.

**DEPARTMENT OF HUMAN RESOURCES, Baltimore City Office of Child Support Enforcement ex rel. Baltimore City Department of Social Services.**

No. 64 Sept.Term, 2009.

Court of Appeals of Maryland.

Feb. 9, 2010.

Reconsideration Denied April 2, 2010.

618

Julia C. Schiller, Asst. Public Defender (Elizabeth L. Julian, Acting Public Defender, Baltimore, MD), on brief, for Petitioner.

Bradley J. Neitzel, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, Judge.

The Circuit Court for Baltimore City found, on 18 October 2007, the Petitioner, Rafael Flanagan ("Flanagan"), in constructive civil contempt for his failure to pay child support in accordance with a 1987 consent paternity and child support decree. Prior to the contempt finding, Flanagan filed a motion to dismiss the civil contempt petition, contending that the Circuit Court lacked personal jurisdiction over him because the Respondent, the Department of Human Resources, Baltimore City Office of Child Support Enforcement ("DHR"), failed to effect proper service of process upon him, as required by the Maryland Rules and the Family Law Article of the

Maryland Code. Obviously, the Circuit Court denied Flanagan's motion. On Flanagan's appeal, the Court of Special Appeals affirmed. For reasons we shall explain, we reverse the judgment of the Court of Special Appeals and hold that the Circuit Court erred in denying Flanagan's motion to dismiss the civil contempt petition.

## FACTS

Sherry Flanagan, now emancipated, was born to Cynthia Rhodes on 13 August 1983. On 19 March 1987, Rhodes filed in the Circuit Court a petition to establish the paternity of Sherry, then three years old, alleging that Flanagan was Sherry's father. In response to the paternity petition, Flanagan entered into a consent paternity decree on 5 May 1987. The decree declared Flanagan to be Sherry's father and obligated him to pay $20 per week in child support. In addition, the terms of the consent decree required Flanagan: (1) to obtain the court's consent before leaving the State of Maryland; (2) to report any change in address to the Bureau of Support Enforcement; and, (3) to appear in response to any notice served by mail or by a peace officer in connection with the consent order. The consent decree provided that its provisions pertaining to guardianship, custody, support, bond, and relationship "remain subject to further Order of the Court."

Over the years that followed entry of the consent paternity decree, Flanagan utterly failed to make any child support payments. On 9 July 1990, Rhodes petitioned the Circuit Court to issue a contempt of court show cause order. The court issued the order, which required that Flanagan appear for a 6 August 1990 show cause hearing to explain why he should not be held in contempt for his failure to make the child support payments, which were by that time $2,780 in arrears. The record indicates that, on 26 July 1990, the Sheriff attempted to serve a copy of the petition and show cause order on Flanagan at 3459 Cottage Avenue, Baltimore, Maryland, the address Flanagan had provided the court in the earlier paternity proceedings. Copies of the petition and

order were left at the address, without making personal contact with Flanagan. The Sheriff made a *non est* return, according to the court record.

Five years later, on 11 August 1995, DHR, on behalf of Rhodes, filed with the Circuit Court a new petition for a contempt of court show cause order, alleging that Flanagan was in contempt for failure to pay ordered child support, which now totaled $5,568.47 in arrears. On 21 August 1995, the Circuit Court issued the requested show cause order, which directed Flanagan to appear at a hearing scheduled for 11 September 1995, provided the order was served on him by 1 September 1995. The record indicates that, on 24 August 1995, a copy of the show cause order was left under the door of the residence at 1925 Pennsylvania Avenue, Baltimore, Maryland, which, according to DHR, was Flanagan's last known address at that time. On 11 September 1995, Flanagan's case was called, but he was not present. Accordingly, the Circuit Court issued a paternity contempt arrest warrant for Flanagan.[1]

Flanagan was not arrested on the paternity contempt arrest warrant until January 2007, twelve years after issuance of the warrant. At Flanagan's bail review hearing on 26 January 2007, he was served with an Incarceration Show Cause Order, which again required him to appear at a hearing, scheduled initially for 24 April 2007, but postponed until 18 October 2007, to explain why he should not be held in contempt for failure to pay the agreed child support. On 23 May 2007, Flanagan, now represented by an attorney from the local State Public Defender's Office, filed a motion to dismiss the contempt petition pursuant to Rule 2–507(b),[2] based on lack of personal

---

**1.** The record contains additional show cause orders issued for Flanagan's appearance, dated 24 April 1996, 21 May 1996, and 3 June 1996.

**2.** Rule 2–507(b) remains unchanged today from the version in effect in 2007, when the Circuit Court ruled on Flanagan's motion to dismiss. The Rule provides:

> For lack of jurisdiction. An action against any defendant who has not been served or over whom the court has not otherwise acquired

jurisdiction. He contended that the court lacked jurisdiction over him because he was not served personally and properly with the petition as required by the Maryland Rules governing service of pleadings that originate a new civil action. As his argument went, Flanagan iterated that service of the order by leaving it under the door at 1925 Pennsylvania Avenue was insufficient, and that service of the paternity contempt warrant in 2007 was invalid because the warrant had been issued improperly (in sort of a "fruit of the poisonous tree" theory). In addition, he argued that service of the Incarceration Show Cause Order on him at the January 2007 bail hearing was inadequate because the original contempt petition was not served with it and more than 120 days elapsed since the contempt petition was filed.

After a hearing on 5 September 2007, the Circuit Court denied Flanagan's motion to dismiss the petition for lack of personal jurisdiction. On 18 October 2007, Flanagan appeared in the Circuit Court for the contempt hearing and, after presentation of an agreed admission of fact that Flanagan was $11,683.47 in arrears on his child support payments, the court found him in constructive civil contempt, but deferred disposition.[3]

---

jurisdiction is subject to dismissal as to that defendant at the expiration of 120 days from the issuance of original process directed to that defendant.
Md. Rule 2–507(b) (2010).

**3.** In general, a party may appeal only from a final judgment. *See* Md.Code, Cts. & Jud. Proc. § 12–301 (1974, 2006 Repl.Vol.). Section 12–304(a), entitled "Appeals in contempt cases," of the Courts and Judicial Proceedings Article, however, provides that "[a]ny person may appeal from any order or judgment passed to preserve the power or vindicate the dignity of the court and adjudging him in contempt of court, including an interlocutory order, remedial in nature, adjudging any person in contempt, whether or not a party to the action." Md. Code, Cts. & Jud. Proc. § 12–304(a). In *Bryant v. Howard County Department of Social Services*, 387 Md. 30, 874 A.2d 457 (2005), we held that the "plain wording and a common sense reading of § 12–304(a) indicate an intent to permit an appeal from the adjudication of contempt itself, without regard to whether an immediate sanction is imposed." *Id.* at 45, 874 A.2d at 466. Thus, under § 12–304(a) and *Bryant*, the timing of Flanagan's appeal, which was noted after the

Flanagan appealed timely to the Court of Special Appeals. On 11 March 2009, the Court of Special Appeals, in an unreported opinion, affirmed the Circuit Court, rejecting Flanagan's claim that the lower court lacked personal jurisdiction over him. Specifically, the Court of Special Appeals found: (1) that the 1987 consent paternity decree provided Flanagan with notice of his obligation to pay child support; (2) that the Circuit Court obtained personal jurisdiction over Flanagan at the outset of the paternity proceedings in 1987 and continued to have jurisdiction to enforce the terms of the consent decree; and, (3) that the personal delivery of the incarceration show cause order to Flanagan at his bail review hearing constituted proper service. The court noted that, while it agreed that service of the 21 August 1995 show cause order at 1925 Pennsylvania Avenue was defective, Flanagan's substantive due process right to notice and his procedural due process right were satisfied; thus, the Circuit Court obtained personal jurisdiction over him to adjudicate the contempt proceedings.

We granted Flanagan's petition for writ of certiorari, 409 Md. 46, 972 A.2d 861 (2009), to consider whether the Circuit Court, at the time of the 2007 contempt proceedings, lacked personal jurisdiction over Flanagan and therefore erred in denying Flanagan's motion to dismiss the contempt petition.[4] For reasons we shall explain, we are obliged to agree with Flanagan and reverse the judgment of the Court of Special Appeals.

## ANALYSIS

 "It is fundamental that before a court may impose upon a defendant a personal liability or obligation in favor of

---

Circuit Court's finding of contempt but prior to the court's final disposition of the action and imposition of sanctions, was proper.

**4.** Flanagan's petition for writ of certiorari frames the question as follows:

Where there was no valid personal service, did the Circuit Court err in denying the motion to dismiss civil contempt for lack of personal jurisdiction and proceeding on the show cause order in the absence of valid personal service?

the plaintiff or may extinguish a personal right of the defendant it must have first obtained jurisdiction over the person of the defendant." *Lohman v. Lohman,* 331 Md. 113, 125, 626 A.2d 384, 390 (1993). Stated another way, we have observed that "[t]here can be no judgment nor decree *in personam* unless the defendant has been notified of the proceeding by proper summons, for the court has no jurisdiction over him until such service is properly accomplished, or is waived by a voluntary appearance by the defendant, either personally or through a duly authorized attorney." *Id.* at 130, 626 A.2d at 392. The Maryland Rules governing service of process "are declaratory of the basic requirements of due process of law in the prosecution of constructive contempts," *Reamer v. Reamer,* 246 Md. 532, 535, 229 A.2d 74, 76 (1967), and failure to comply with those Rules constitutes a jurisdictional defect that prevents a court from exercising personal jurisdiction over the defendant. *Lohman,* 331 Md. at 130, 626 A.2d at 392. In the present case, we must determine whether, at any relevant point in time, Flanagan was served properly in accordance with the Maryland Rules such that the Circuit Court obtained personal jurisdiction over him for purposes of the exercise of its contempt authority in aid of execution on the 1987 child support order. We conclude that Flanagan was not served properly, and, thus, the Circuit Court lacked personal jurisdiction to adjudicate the contempt petition against him in 2007.

## A. The 1995 Show Cause Order

■ To recapitulate, in 1995, in response to DHR's petition for a contempt of court show cause order, the Circuit Court issued an order directing Flanagan to appear at a show cause hearing scheduled for 11 September 1995, provided the order was served on him by 1 September 1995. On 24 August 1995, a copy of the show cause order[5] was left under the door at

---

5. The record suggests that the petition for contempt was not included for service with the copy of the show cause order. As discussed *infra,* failure to include a copy of the petition for contempt with the show cause order would render service invalid under Rule 15–206(d), and would provide an additional reason why the service effected at 1925

1925 Pennsylvania Avenue, an address which, according to DHR, was the last known address for Flanagan at that time. The record indicates, however, that 1925 Pennsylvania Avenue was but one of a number of potential addresses that DHR possessed for where Flanagan might be found. A "Wage History Report" contained in the record lists seven additional addresses, apparently of businesses for which Flanagan worked in the years prior to service of the show cause order at 1925 Pennsylvania Avenue. Based on the discussion below, we conclude that the service of process effected in the present case, namely, leaving the show cause order under the door of 1925 Pennsylvania Avenue, was insufficient under the relevant Maryland Rules and case law to provide the Circuit Court with personal jurisdiction over Flanagan for purposes of conducting a contempt proceeding.

Rule 2–121, entitled "Process—Service—In personam," governs service of original process in civil actions. The version of that section in effect in 1995 provided:

(a) Generally.—Service of process may be made within this State or outside this State when authorized by the law of this State, by delivering to the person to be served a copy of the summons, complaint, and all other papers filed with it, or by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: "Restricted Delivery—show to whom, date, address of delivery." Service by certified mail under this Rule is complete upon delivery. Service outside the State may also be made in the manner prescribed by the court or prescribed by the foreign jurisdiction if reasonably calculated to give actual notice.

(b) Evasion of Service.—When proof is made by affidavit that a defendant has acted to evade service, the court may order that service be made by mailing a copy of the summons, complaint, and all other papers filed with it to the defendant at the defendant's last known residence and

---

Pennsylvania Avenue in 1995 cannot form the basis for the Circuit Court's exercise of personal jurisdiction over Flanagan.

delivering a copy of each to a person of suitable age and discretion at the place of business, dwelling house, or usual place of abode of the defendant.

(c) By Order of Court.—When proof is made by affidavit that good faith efforts to serve the defendant pursuant to section (a) of this Rule have not succeeded and that service pursuant to section (b) of this Rule is inapplicable or impracticable, the court may order any other means of service that it deems appropriate in the circumstances and reasonably calculated to give actual notice.

(d) Methods Not Exclusive.—The methods of service provided in this Rule are in addition to and not exclusive of any other means of service that may be provided by statute or rule for obtaining jurisdiction over a defendant.

Rule 2–121 (1995). Rule 1–321, entitled "Service of pleadings and papers other than original pleadings," governs service of process for subsequent pleadings where an individual is already a party to the action. As it does today, the version of that section in effect in 1995 provided:

(a) Generally.—Except as otherwise provided in these rules or by order of court, every pleading and other paper filed after the original pleading shall be served upon each of the parties. If service is required or permitted to be made upon a party represented by an attorney, service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or upon a party shall be made by delivery of a copy or by mailing it to the address most recently stated in a pleading or paper filed by the attorney or party, or if not stated, to the last known address. Delivery of a copy within this Rule means: handing it to the attorney or to the party; or leaving it at the office of the person to be served with an individual in charge; or, if there is no one in charge, leaving it in a conspicuous place in the office; or, if the office is closed or the person to be served has no office, leaving it at the dwelling house or usual place of abode of that person with some individual of suitable age and discretion who is residing there. Service by mail is complete upon mailing.

(b) Party in Default—Exception.—No pleading or other paper after the original pleading need be served on a party in default for failure to appear except a pleading asserting a new or additional claim for relief against the party which shall be served in accordance with the rules for service of original process.

(c) Requests to Clerk—Exception.—A request directed to the clerk for the issuance of process or any writ need not be served on any party.

Rule 1–321 (1995).

Regardless of whether service of the show cause order and petition for contempt was required to comply with the rigors of Rule 2–121 as an original pleading or the more relaxed standards of 1–321 as a subsequent pleading, the service effected in the present case was deficient under either. It is readily apparent that service was not effected properly under any of the options listed in Rule 2–121. Even under the more lenient Rule 1–321, service of a subsequent filing upon an individual at his or her usual place of abode, where the person to be served is not present, must be effected upon an individual of suitable age and discretion who is residing there. In the present case, the show cause order merely was left under the door of 1925 Pennsylvania Avenue, where DHR believed Flanagan to be residing, rather than served on an individual residing at the address and capable of receiving service. In addition, there is no indication that service was attempted at any of the other potential addresses listed for Flanagan (whether residential or places of business), such that a court could conclude that DHR exercised good faith efforts to serve Flanagan or that Flanagan was evading service. The attempt at service effected here falls short of compliance with either of the Rules governing service of process. Such failure undermines fatally reliance on service of the 1995 show cause order as the basis for personal jurisdiction over Flanagan by the Circuit Court for the purpose of the 2007 contempt proceedings.

DHR's fallback contention is that leaving the order under the door at Flanagan's alleged residence constituted sufficient notice under the doctrine of continuing jurisdiction. Under that doctrine, if a court obtains personal jurisdiction initially over parties to an action (in this case, the entry of the 1987 consent decree), its jurisdiction continues throughout all subsequent proceedings which arise out of the original cause of action. *Glading v. Furman*, 282 Md. 200, 204, 383 A.2d 398, 401 (1978); *Michigan Trust Co. v. Ferry*, 228 U.S. 346, 353, 33 S.Ct. 550, 552, 57 L.Ed. 867, 874 (1913) (noting that, if a judicial proceeding is begun with jurisdiction over the person of the party concerned it is within the power of a State to bind him by every subsequent order in the cause). In order for the court to maintain personal jurisdiction under the doctrine, however, the defendant must receive reasonable notice and be afforded an opportunity to be heard at each new step in the case if an in personam decree is to be rendered against him. *Glading*, 282 Md. at 204, 383 A.2d at 401. To satisfy the requirements of the doctrine, DHR contends that: the contempt proceeding arose out of the original paternity proceedings; the service afforded Flanagan in 1995 provided him with reasonable notice and opportunity to be heard; and, thus, the Circuit Court retained its personal jurisdiction over Flanagan despite DHR's failure to comply with either Rule 2–121 or Rule 1–321 as previously explained. Even under the doctrine's greatly reduced standard, however, we find that leaving the show cause order under the door at 1925 Pennsylvania Avenue did not constitute providing Flanagan with reasonable notice and opportunity to be heard. In *Glading*, "reasonable notice and opportunity to be heard" were provided by the fact that the non-resident defendant received actual notice of the proceedings through personal service, although improperly effected, in Virginia. *Glading*, 282 Md. at 209, 383 A.2d at 403. Here, there is no such evidence in the record to suggest that Flanagan received actual, if improperly served, notice of the contempt petition or the show cause order. Likewise, there is no evidence that would lead to the conclusion that leaving the order under the door at one of at least eight

potential locations provided Flanagan with reasonable notice and opportunity to be heard. As such, attempted service of the 1995 show cause order cannot be used to provide the Circuit Court with personal jurisdiction over Flanagan to justify proceeding on the contempt petition.

## B. The 1995 Paternity Contempt Warrant

█ DHR posits next that, even if service of the show cause order in 1995 was deficient, the court issued properly a paternity contempt warrant for Flanagan in 1995, and that the service of such warrant in 2007 provides an alternative basis for personal jurisdiction under § 5–1041 of the Family Law Article [6] of the Maryland Code. We conclude, however, that the 1995 paternity contempt warrant was issued improperly and the service of that improperly issued warrant cannot supply the basis for the Circuit Court's personal jurisdiction to find Flanagan in contempt.

Title 5 of the Family Law Article, entitled "Children," § 5–1041,[7] entitled "Enforcement of order," provides:

(a) In general.—A court order under this subtitle is enforceable in the same manner and to the same extent as any other order of an equity court in this State.

(b) Support orders.—If an individual fails to make a support payment ordered under this subtitle, the individual shall be served with an order that directs the individual to show cause why that individual should not be held in contempt.

(c) Warrants.—(1) The court shall issue a warrant for the arrest of any individual who:

(i) fails to appear in response to a show cause order served on the individual under this section; or

(ii) cannot be served with the show cause order.

---

6. All references to the Maryland Code contained hereinafter refer to the Family Law Article.

7. The current version of § 5–1041 is identical to the version in effect at the time the paternity contempt warrant was issued.

(2) A warrant issued under this subsection shall be issued as provided in § 5–1014 of this subtitle.

(d) Sanctions for support orders.—If the court finds that an individual has failed to make a support payment ordered under this subtitle while having the means to pay, the court:

(1) shall find the individual guilty of civil contempt; and

(2) may order the individual imprisoned until the individual complies with the support order or otherwise purges the contempt.

Md.Code, Fam. Law § 5–1041 (1999, 2006 Repl.Vol.). Under this section, a warrant shall issue only if the defendant (1) fails to appear after proper service of the show cause order or (2) cannot be served with the show cause order. As discussed *supra*, service of the show cause order by leaving a copy of it under the door at 1925 Pennsylvania Avenue was insufficient. Thus, issuance of the 1995 paternity contempt warrant cannot be considered proper under § 5–1041(c)(1)(i) because it may not be said that Flanagan failed to appear in response to a show cause order *served* on him. In addition, there is no suggestion that service upon Flanagan was impossible; rather, it appears that no efforts were made to serve Flanagan at one of the alternative addresses listed for him or to seek leave from the court for alternative service or a declaration that Flanagan was evading service. As such, issuance of the paternity contempt warrant cannot be justified by resort to § 5–1041(c)(1)(ii), as there is no proof that Flanagan could not be served. The 1995 paternity contempt warrant was issued improperly, and its issuance and service cannot form the basis for the Circuit Court's exercise of personal jurisdiction in 2007.[8]

---

8. DHR contends that issuance of the paternity contempt warrant was valid under § 5–1014. That section, which is identical to the version in effect in 1995, provides that "[w]hen a complaint is filed under this subtitle, the court may issue, to assure the appearance of the defendant at trial: (1) a summons for the appearance of the defendant; or (2) a warrant for the arrest of the defendant." § 5–1014. Section 5–1014, however, outlines the options available to the court upon an *initial* filing of a paternity complaint. As discussed *supra*, § 5–1041 governs

We observe, in passing, that Flanagan asserts additionally that service of the paternity contempt warrant in 2007 occurred too late to establish personal jurisdiction in the Circuit Court, in violation of Rule 2–507(b). That Rule states that "[a]n action against any defendant who has not been served or over whom the court has not otherwise acquired jurisdiction is subject to dismissal as to that defendant at the expiration of 120 days from the issuance of original process directed to that defendant." Rule 2–507(b). Flanagan contends that the "original process" in the case was the issuance of the show cause order on 21 August 1995, and points to the fact that service of the arrest warrant was not effected until January 2007, well beyond the 120–day limit. Flanagan's argument is flawed. Rule 2–507(b) provides that failure to serve the defendant within 120 days from the issuance of original process merely makes the action "subject to dismissal." Whether to dismiss rests in the sound discretion of a trial judge in the first instance, based on his or her weighing of the balance of the rights, interests, and reasons of the parties for the delay and the public demand for prompt resolution of litigation. *Langrall, Muir & Noppinger v. Gladding,* 282 Md. 397, 400–01, 384 A.2d 737, 739 (1978). Dismissal is not an automatic remedy for delayed service. As such, it is not proper, in the first instance, for an appellate court to decide whether the 12 year interval between issuance of the paternity contempt warrant and service of the warrant on Flanagan merits inherently dismissal of the contempt proceedings.

## C. The 2007 Incarceration Show Cause Order

■ Rule 15–206, entitled "Constructive civil contempt," governs the service of process in constructive civil contempt proceedings to enforce a child support order. The Rule provided in 2007, in pertinent part:

---

the court's options when attempting to enforce a previously issued child support order through its contempt power. As such, issuance of the paternity contempt warrant in this case cannot be justified under § 5–1014.

(a) Where filed. A proceeding for constructive civil contempt shall be included in the action in which the alleged contempt occurred.

(b) Who may initiate. (1) The court may initiate a proceeding for constructive civil contempt by filing an order complying with the requirements of section (c) of this Rule.

(2) Any party to an action in which an alleged contempt occurred and, upon request by the court, the Attorney General, may initiate a proceeding for constructive civil contempt by filing a petition with the court against which the contempt was allegedly committed.

(3) In a support enforcement action where the alleged contempt is based on failure to pay spousal or child support, any agency authorized by law may bring the proceeding.

(c) Content of order or petition. (1) An order filed by the court pursuant to subsection (b)(1) of this Rule and a petition filed pursuant to subsection (b)(2) shall comply with Rule 2–303 and shall expressly state whether or not incarceration is sought.

(2) Unless the court finds that a petition is frivolous on its face, the court shall enter an order providing for (i) a prehearing conference, or (ii) a hearing, or (iii) both. The scheduled hearing date shall allow a reasonable time for preparation of a defense and may not be less than 20 days after the prehearing conference. An order issued on a petition or on the court's own initiative shall state:

(A) the time within which any answer by the alleged contemnor shall be filed, which, absent good cause, may not be less that ten days after service of the order;

(B) the time and place at which the alleged contemnor shall appear in person for (i) a prehearing conference, or (ii) a hearing, or (iii) both, and if a hearing is scheduled, whether it is before a master pursuant to Rule 9–208(a)(1)(G) or before a judge; and

(C) if incarceration to compel compliance with the court's order is sought, a notice to the alleged contemnor in the following form:

* * *

(d) Service of order. The order, *together with a copy of any petition and other document filed in support of the allegation of contempt,* shall be served on the alleged contemnor pursuant to Rule 2–121 or 3–121 or, if the alleged contemnor has appeared as a party in the action in which the contempt is charged, in the manner prescribed by the court.

* * *

Rule 15–206 (2007) (emphasis added).[9] As noted *supra,* absent service in accordance with the Rule, a circuit court lacks personal jurisdiction over a defendant and may not proceed to adjudicate the contempt petition.

At Flanagan's January 2007 bail hearing (which occurred solely because he was in custody as the result of the improperly issued paternity contempt warrant), he was served with an Incarceration Show Cause Order. The record suggests, and Flanagan maintains, however, that the original petition for contempt from 1995 was not included in that service. Rule 15–206 requires that, when serving an individual alleged to be in constructive civil contempt, the alleged contemnor must be provided with the order, *together with a copy of any petition for contempt.* In the present case, the record does not reflect that Flanagan was served with the petition for contempt in conjunction with service of the Incarceration Show Cause Order. Service of the Incarceration Show Cause Order alone in 2007 was insufficient, under Rule 15–206(d), to provide the Circuit Court with personal jurisdiction over Flanagan in order to adjudicate whether he was in contempt of the 1987 child support order.

---

**9.** The current version of Rule 15–206 is identical to the version of the Rule in effect in 2007 when Flanagan was served with the Incarceration Show Cause Order.

## D. The Statute of Limitations

Section 10–102 of the Family Law Article, entitled "Statute of limitations for contempt proceeding," provides that "[a] contempt proceeding for failure to make a payment of child or spousal support under a court order shall be brought within 3 years of the date that the payment of support became due." § 10–102. Noting that dismissal of the present contempt proceedings would result in collection of Flanagan's past due child support being barred by the statute of limitations, DHR contends that, rather than ordering dismissal of the contempt petition if all of its arguments heretofore are found wanting, the proper remedy is to direct the Circuit Court to continue the proceeding and allow for proper service of a new show cause order and the original petition for contempt upon Flanagan. We must decline regretfully that proposal. The statute of limitations clearly provides that collection of unpaid child support is limited to those amounts which the obligor has failed to pay in the three years preceding the contempt proceeding. Allowing DHR to serve Flanagan now would allow it to collect child support arrearages that Flanagan failed to pay well over ten years ago. Such an action would undermine the clear legislative dictates of the statute of limitations contained in § 10–102. Thus, the only proper remedy, when a circuit court lacks personal jurisdiction to adjudicate a contempt proceeding, as was the case in 2007 here, is to grant dismissal, with prejudice, of the contempt petition.

## CONCLUSION

Due to a failure to effect proper service upon Flanagan, the Circuit Court lacked personal jurisdiction over him when it adjudicated the contempt proceedings against him in 2007. Service of the 1995 show cause order on the real property at 1925 Pennsylvania Avenue by leaving the order under the door of the residence did not comply with either Rule 2–121, Rule 1–321, or the "reasonable notice and opportunity to respond" standard of the continuing jurisdiction doctrine. In addition, the Circuit Court issued improperly, under § 5–1041,

the 1995 paternity contempt warrant because there was no indication that service had been made properly upon Flanagan and that he failed to respond, or that service upon Flanagan could not be made. Finally, service of the 2007 Incarceration Show Cause Order failed to include providing Flanagan with a copy of the 1995 petition for contempt, as required by Rule 15–206(d). Therefore, the Circuit Court lacked personal jurisdiction over Flanagan to adjudicate the contempt proceedings against him, and it erred in denying his motion to dismiss. By operation of the statute of limitations for collection of child support arrearages contained in § 10–102, further action against Flanagan for payment of back child support is foreclosed unfortunately.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF CONTEMPT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THE CIRCUIT COURT WITH INSTRUCTIONS TO DISMISS THE CONTEMPT PETITION, WITH PREJUDICE; RESPONDENT TO PAY THE COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS.**

Judge MURPHY joins the judgment only.