845 A.2d 1194

James J. DODSON

v.

Amelia C. DODSON.

No. 63, Sept. Term, 2002.

Court of Appeals of Maryland.

April 5, 2004.

Patrick R. Hudson, Waldorf, for Petitioner.

James W. Almand (Bruce F. Bright of Ayres, Jenkins, Gordy & Almand, P.A., on brief), Ocean City, for Respondent.

Argued Before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

ELDRIDGE, Judge.

The issue in this case is whether, under Maryland law, a trial court may award compensatory damages, based upon the alleged negligent failure to comply with a court order, in a civil contempt action. We shall answer that question in the negative and reverse the judgment of the Court of Special Appeals.

I.

In 1999, the respondent Amelia C. Dodson filed, in the Circuit Court for Worcester County, a divorce action against the petitioner James J. Dodson. A *pendente lite* order issued on July 30, 1999, *inter alia,* granted Amelia custody of the parties' three children, granted to Amelia and the children use and possession of the parties' condominium in Ocean City, Maryland, and provided that James "shall pay the monthly mortgage payment, monthly assessment dues, monthly taxes, *insurance* and water bill" pertaining to the Ocean City condominium (emphasis added). A revised *pendente lite* order was filed on October 31, 2000, although it did not modify the above-quoted provision concerning "insurance."

There were two separate insurance policies providing fire insurance for the Dodsons' Ocean City condominium. A master fire policy covered the building and the Dodsons' unit, except for personal property contained in the unit. The

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

premiums on this policy were paid by the condominium association, with each member paying his or her unit's share as part of the condominium association assessments and dues. In addition, James and Amelia Dodson had an insurance policy, through the Atlantic–Smith, Cropper & Deeley insurance agency, covering personal property in their condominium unit. The premium for the personal property insurance was paid quarterly, amounting to $56.50 every three months. According to the testimony of a representative of the insurance agency, a bill for the quarterly premium would be sent to James Dodson prior to each due date, and he would then send a check to the agency.

On the evening of December 19, 2000, while Amelia Dodson was at a party and the three children were in the Ocean City condominium unit under the care of a babysitter, a fire broke out in the condominium unit. It was caused by a lighted lamp which was lying on a bed. Apparently, the lamp had fallen on the bed when two of the children were playing in one of the bedrooms. Although no one was injured, the fire caused substantial damage to the condominium unit and to the personal property contents. The insurance on the structure had been in effect, and that insurance paid for the repairs to the unit. Nevertheless, when the Dodsons on December 20, 2000, contacted the Atlantic–Smith, Cropper & Deeley insurance agency to report the fire damage to the contents of the condominium unit, they were informed by a representative of the agency that the insurance policy covering the contents had been canceled on December 4, 2000, for nonpayment of the quarterly premium which had been due on November 1, 2000.

Although there were some conflicts in the testimony concerning the Dodsons' procedures for making sure that bills were paid, it was undisputed that the quarterly premium payment due on November 1, 2000, had not been paid. It was also undisputed that James Dodson had not received the bill for the premium due on November 1st and that he had not received a December 14, 2000, letter from the insurance agency informing him that the policy had been canceled for nonpayment of the quarterly premium.

Prior to their separation, the Dodsons' principal residence had been in Clinton, Maryland. After their separation, and during the years 1999 and 2000, Amelia and the children resided at the Ocean City condominium, and James resided at various places in Clinton, Maryland, and Waldorf, Maryland. A representative of the insurance agency testified that a premium payment, for an earlier quarterly period in the year 2000, was in an envelope which showed a Waldorf return address for James Dodson which was different than the address in the agency's records, and that the agency *sua sponte* changed its records to reflect the new address shown on the outside of the envelope. When the bill for the November 2000 quarterly premium and the December 14, 2000, letter were sent to this new address, James was no longer living there.

In January 2001, Amelia commenced the present action by filing, in the Circuit Court for Worcester County, a petition to hold James in contempt. The petition referred to the court's *pendente lite* order requiring James to pay for "insurance" on the condominium. It stated that James "failed to pay" the premium due in November 2000, that the fire in December 2000 damaged personal property belonging to Amelia and the children, that there was no insurance to cover the damage, and that the uncompensated damages totaled $25,000.00. The petition requested the following:

"A. Find the Defendant in contempt;

"B. Order Defendant to reimburse Plaintiff for her loss;

"C. Impose appropriate sanctions against Defendant for his contempt, including incarceration;

"D. Order Defendant to reimburse Plaintiff for the attorney's fees related to this motion and hearing thereon;

"E. Issue the attached Show Cause Order and schedule a hearing at the earliest possible time; and

"F. Grant such other and further relief as this cause may require."

Subsequently, a show cause order was issued by the court.

The defendant James responded by asserting that he had timely paid all insurance premiums when he was given the

bills, and that the fire was caused by "the bedroom mattress which caught on fire because Plaintiff left a lamp thereon, and went to a party, leaving the children home with a babysitter." At the hearing on the contempt petition and in a memorandum, James asserted that the "insurance" referred to in the *pendente lite* order was the insurance on the condominium unit, not the contents, and that the insurance on the unit was always maintained. James also argued, *inter alia*, that a contempt action was not an appropriate action to resolve the question of which party's negligence caused a loss to the contents, that the use of a contempt action to resolve this issue was "to short circuit due process of law to Defendant," that "[n]egligence is a tort action to which Defendant is entitled to a trial by jury under [the] facts," that contempt "require[s] a willful action or inaction in violating a clear mandate of [a] Court Order" and "does not include and can not be support[ed] by innocent inaction or negligence," and that the plaintiff "does not have the ability to pay" the compensatory damages demanded of the plaintiff.

The plaintiff Amelia asserted that the "insurance" referred to in the *pendente lite* order included insurance coverage on the personal property contents of the condominium, that James was responsible for paying the premiums and had, in fact, paid the premiums until November 2000, that James's failure to pay the premium in November 2000 was a violation of the *pendente lite* order, that "[n]othing in *Lynch [v. Lynch,* 342 Md. 509, 677 A.2d 584 (1996)]* or any other appellate decisions in Maryland requires a finding of 'wilfulness' before holding a defendant in civil contempt," that James "may be held in contempt for not paying the insurance premium . . . regardless of whether the Court determines that the failure to pay was negligent or wilful," that "the petitioner in a contempt proceeding must only prove that the money was not paid," and that "a trial court may award compensatory damages in a civil contempt proceeding." The only authority relied upon for the assertion that compensatory damages may be awarded in a civil contempt action was *Jones v. Wright,* 35 Md.App. 313, 370 A.2d 1144 (1977).

Following the hearing at which several witnesses testified, and the submission of memoranda, the trial judge filed a written opinion and order holding that this was a civil rather than a criminal contempt action, that the defendant James was required by the *pendente lite* order to pay the November 2000 premium bill for insurance on the condominium contents, "that the defendant failed, albeit negligently, to timely pay that insurance bill," and that "this court finds the defendant to be in civil contempt." The court also found that the negligence was solely that of the defendant; neither the insurance agent nor the plaintiff were found to be negligent. The court rejected the defendant's argument that he should have a jury trial on the negligence issue. With regard to the defendant's inability to pay defense, the court stated:

"Negligently failing to pay the insurance bill does not constitute an inability to obey the court order. Additionally, in the instant case, there is not even a suggestion by the Defendant that he could not afford to pay the small insurance premium as it came due."

The trial court did not address the defendant's contention that he did not have the ability to pay the demanded compensatory damages.

Finally, the court agreed with the plaintiff's argument that, under Maryland law, compensatory damages could be awarded in a civil contempt action. The court awarded the plaintiff compensatory damages of $19,311.00 but rejected the request for attorney's fees, stating:

"The Plaintiff also requests attorney's fees in the amount of $2,461.50. While Maryland does permit an award of attorney's fees in contempt actions, any award is left to the discretion of the trial judge. Because in this case, the Defendant's contempt was negligent, and the issues involved somewhat complex, this Court does not believe that attorney's fees are warranted, and, therefore, none will be ordered."

The defendant James appealed to the Court of Special Appeals, and the intermediate appellate court affirmed in an

unreported opinion. Thereafter, we granted the defendant's petition for a writ of certiorari. *Dodson v. Dodson,* 371 Md. 68, 806 A.2d 679 (2002).

## II.

This Court has not previously decided whether compensatory damages may be awarded in a civil contempt action; the issue, therefore, is one of first impression for the Court.[1]

---

1. In *Save–Mor Drugs v. Upjohn Co.,* 225 Md. 187, 170 A.2d 223 (1961), the trial court in a civil contempt action for violating an injunction awarded to the plaintiff costs of the litigation and attorneys' fees. This Court described the award as "essentially an award for damages," but pointed out that "no question is raised here as to the kind of relief granted and we shall therefore not go into that matter." 225 Md. at 191, 194, 170 A.2d at 225, 228. In *Jones v. State,* 351 Md. 264, 278, 718 A.2d 222, 229 (1998), we commented, citing a general treatise, that a possible sanction in a civil contempt action may be a "civil fine" to compensate the plaintiff; no such "fine" was imposed or involved in that case.

   In addition, where an earlier judgment mandates the payment of a sum of money, and the defendant fails to comply, Maryland Rule 2–648(a), *inter alia,* authorizes a money judgment for the specific amount still due on the earlier judgment. While this Rule has been deemed applicable in civil contempt actions, *Lynch v. Lynch,* 342 Md. 509, 516 n. 4, 677 A.2d 584, 588 n. 4 (1996), the Rule does not provide for compensatory damages. It simply authorizes a judgment for the unpaid amount mandated by the prior judgment.

   In a few other jurisdictions, there are statutes expressly authorizing the award of compensatory damages in contempt actions, but Maryland has no such statute. In jurisdictions where the issue is not controlled by statutes, the decisions are in conflict, and to some extent may reflect different views concerning the nature and classifications of contempt actions.

   A sampling of the cases holding that compensatory damages may not be recovered in contempt actions include *Lightsey v. Kensington Mortgage and Finance Corp.,* 294 Ala. 281, 288, 315 So.2d 431, 437 (1975) ("An indemnity or a compensatory award of damages must be determined in an ancillary proceeding and is not permissible as an integral part of the court's adjudication of contempt. * * * [E]ither party on demand would be entitled to a jury trial on the issue of damages"); *H.J. Heinz Co. v. Superior Court,* 42 Cal.2d 164, 175, 266 P.2d 5, 12 (1954) ("To allow compensatory damages in the contempt proceeding would have the effect of turning it into an action for damages. In an action for damages, the parties are ordinarily entitled to a trial by jury"); *Camp v. East Fork Ditch Co.,* 137 Idaho 850, 55 P.3d 304, 318 (2002) ("Under Idaho law, however, the court in a contempt proceeding does

Nevertheless, an award of compensatory damages is ordinarily inconsistent with the nature of a constructive civil contempt action under Maryland law.

## A.

In the leading case of *State v. Roll and Scholl,* 267 Md. 714, 726–727, 298 A.2d 867, 875 (1973), Judge J. Dudley Digges for the Court summarized the history of and the confusion surrounding contempt actions (footnote omitted):

"The history of the contempt power is very old with roots stretching back to the early English monarchs and the common law. The power began as a means of assuring the efficiency and dignity of the sovereign but it soon spread to protect representatives of the king. The contempt power of the courts had a similar origin in that the lord chancellor's authority was derived from the king. But, as the courts became more independent of the crown and their power

not have the authority to order the contemnor to pay damages to the complainant"); *Eberle v. Greene,* 71 Ill.App.2d 85, 93, 217 N.E.2d 6, 10 (1966) ("The established rule in Illinois is that the Court may imprison ... for contempt of its orders but is without authority to recompense Plaintiff for his damages"); *State ex rel. Flynn v. District Court,* 24 Mont. 33, 60 P. 493 (1900); *Kasparek v. May,* 174 Neb. 732, 741, 119 N.W.2d 512, 519 (1963) ("[I]ndemnity for damages cannot be secured in a contempt proceeding"); *Elliott v. Burton,* 19 N.C.App. 291, 295, 198 S.E.2d 489, 491 (1973) ("[T]he trial judge in this State has no authority to award indemnifying fines or other compensation to a private party in a contempt proceeding").

Other cases, chiefly relying upon dicta in *United States v. United Mine Workers,* 330 U.S. 258, 303–304, 67 S.Ct. 677, 701, 91 L.Ed. 884, 918 (1947) (a criminal contempt case involving a fine payable to the Government), and *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 444, 449, 31 S.Ct. 492, 499, 501, 55 L.Ed. 797, 807, 809 (1911) (a contempt case involving imprisonment only), have taken the position that a "compensatory fine" designed to compensate the plaintiff may be levied in a civil contempt case. *See, e.g., Lyon v. Bloomfield,* 355 Mass. 738, 744, 247 N.E.2d 555, 559 (1969) ("[A] fine may be assessed for the benefit of a party who has suffered injury because of the contempt"); *Brocker v. Brocker,* 429 Pa. 513, 519, 241 A.2d 336, 339 (1968), *cert. denied,* 393 U.S. 1081, 89 S.Ct. 857, 21 L.Ed.2d 773 (1969) ("[A] Court can for present or past acts of misbehavior amounting to civil contempt impose an unconditional compensatory fine"); *Gordon v. S.S. Vedalin,* 346 F.Supp. 1178, 1183 (D.Md.1972).

increased, the authority to punish with contempt was carried with them. In time it was so established that the power was considered inherent in the courts. *See Ex parte Maulsby,* 13 Md. 625, 634 (1859) for an early statement of this rationale in Maryland. *See also Hitzelberger v. State,* 173 Md. 435, 438, 196 A. 288 (1938); *Kelly v. Montebello Park Co.,* 141 Md. 194, 118 A. 600 (1922). Through the years the historical foundation of the contempt power has tended to erode and crumble and out of the rubble, confused and indistinct categories have arisen."

Judge Digges continued (267 Md. at 727, 298 A.2d at 875–876, footnote omitted):

"Today, contempts are classified as civil or criminal and at least in theory either of these may be direct or constructive. The various categories are not mutually exclusive and in fact the nomenclature assigned to a contempt involves both classes, e.g., a constructive civil, or a direct criminal contempt. Historically, criminal contempts were positive acts which offended the dignity or process of the court. Holding an offending party in contempt of court was designed to vindicate the authority and power of the court and punish disobedience to its orders. The people were considered as the real interested parties to prosecution and the State was generally the prosecutor. *See, e.g., Sheets v. City of Hagerstown,* 204 Md. 113, 102 A.2d 734 (1954); *Kelly v. Montebello Park Co.,* 141 Md. 194, 118 A. 600 (1922). At common law what in Maryland is now regarded as civil contempt probably did not exist; but rather, a process which was employed as a procedure for civil execution was used as a sanction against a party who disobeyed a court order issued for the benefit and advantage of another party in the proceedings. Through the years, civil contempt was substituted for civil execution, and now, in most jurisdictions, civil and criminal contempt are the composite parts of the whole law of contempt, although historically they are derived from a different lineage."

The Court in *Roll and Scholl,* 267 Md. at 728–729, 298 A.2d at 876, went on to point out that, in many other jurisdictions,

the distinctions between different types of contempts are "frequently hazy and indistinct," that the classification of contempts "has plagued the courts of this country on innumerable occasions," and that the approach employed in numerous cases elsewhere, including decisions by the United States Supreme Court, "is unacceptable." As to Maryland, however, the Court emphasized that the law concerning contempt is clear, and that the purpose of civil contempt is to coerce present or future compliance with a court order, whereas imposing a sanction for past misconduct is the function of criminal contempt (267 Md. at 728, 730, 298 A.2d at 876, 877):

> "But, in this State, the distinction between the two types of contempt has been preserved and is important. A civil contempt proceeding is intended to preserve and enforce the rights of private parties to a suit and to compel obedience or orders and decrees primarily made to benefit such parties. These proceedings are generally remedial in nature and are intended to coerce future compliance. Thus, a penalty in a civil contempt must provide for purging. On the other hand, the penalty imposed in a criminal contempt is punishment for past misconduct which may not necessarily be capable of remedy. Therefore, such a penalty does not require a purging provision. . . .

> \* \* \*

> If it is civil contempt, the sanction is coercive and must allow for purging."

Although we have repeatedly stated that the sanction in civil contempt actions is "remedial," our opinions have explained that "remedial" in this context means to coerce compliance with court orders for the benefit of a private party or to issue ancillary orders for the purpose of facilitating compliance or encouraging a greater degree of compliance with court orders. We have not used the term "remedial" to mean a sanction, such as a penalty or compensation, where compliance with a prior court order is no longer possible or feasible. *See, e.g., Long v. State,* 371 Md. 72, 89, 807 A.2d 1, 11 (2002) ("[T]he purpose of [sanctioning] the contemnor is remedial, . . . i.e.

. . . . 'to compel obedience to orders' "); *Rawlings v. Rawlings,* 362 Md. 535, 552 n. 15, 766 A.2d 98, 107 n. 15 (2001) ("An example of a remedial sanction in civil contempt is [a] Rule 15–207(e)(4)–type order"); *Ott v. Frederick County,* 345 Md. 682, 688, 694 A.2d 101, 105 (1997) (" '[T]he purpose of civil contempt proceedings is to coerce future compliance' "); *Lynch v. Lynch, supra,* 342 Md. at 519, 677 A.2d at 589 (Civil contempt " 'proceedings are generally remedial in nature and are intended to coerce future compliance' "); *In re Ann M.,* 309 Md. 564, 569, 525 A.2d 1054, 1057 (1987) ("The sanction imposed for civil contempt is coercive and must allow for purging"); *Rutherford v. Rutherford,* 296 Md. 347, 355, 464 A.2d 228, 233 (1983) ("[T]he purpose of the contempt proceedings . . . was to coerce the defendants to comply with court orders"); *McDaniel v. McDaniel,* 256 Md. 684, 689, 262 A.2d 52, 55 (1970) (The sanction "for civil contempt . . . is intended to be remedial by coercing the defendant to do what he has refused to do") (internal quotation marks omitted); *In re Lee,* 170 Md. 43, 47, 183 A. 560, 562, *cert. denied,* 298 U.S. 680, 56 S.Ct. 947, 80 L.Ed. 1400 (1936) ("[C]ontempts have been divided into two classes with regard to their inherent character or nature, namely, criminal and civil, or punitive and coercive").

■ As emphasized in several of the above-cited cases, because the purpose of civil contempt is to coerce or facilitate compliance with court orders, the sanction imposed for civil contempt "must provide for purging." *See, e.g., In re Ann M., supra,* 309 Md. at 569, 525 A.2d at 1057; *State v. Roll and Scholl, supra,* 267 Md. at 728, 298 A.2d at 876.

■ Furthermore, in light of the coercive nature of civil contempt, a *present* inability to comply with the prior court order, or with the purging provision if it is different from the prior order, is a defense in a civil contempt action and precludes the imposition of a penalty. *See, e.g., Long v. State, supra,* 371 Md. at 89–90, 807 A.2d at 11 ("[T]his Court consistently, and emphatically, has held that a civil contemnor may be incarcerated only when he or she has been found to

have 'the present ability to purge the contempt' "); *Rawlings v. Rawlings, supra,* 362 Md. at 549, 766 A.2d at 105 (Sanctions "in the civil contempt proceedings" may not be imposed upon a contemnor if "it was shown that . . . he or she did not have the present ability to purge"); *Thrower v. Support Enforcement,* 358 Md. 146, 161, 747 A.2d 634, 642 (2000) ("It defies any semblance of logic or human experience to suppose that, on $69/week unemployment benefits and with no other significant assets, [the defendant] would be able to pay $840 [, the purge amount,] within a month"); *Dorsey and Craft v. State,* 356 Md. 324, 351, 739 A.2d 41, 56 (1999) ("[P]resent inability to comply with the court order or the purging provision is traditionally a defense in a constructive civil contempt case"); *Jones v. State,* 351 Md. 264, 276, 718 A.2d 222, 228 (1998) ("[A]ny party judged to be a civil contemnor must be afforded the opportunity to show a present inability to purge the contempt"); *Lynch v. Lynch, supra,* 342 Md. at 523, 677 A.2d at 591 ("[T]he goal of civil contempt proceedings, to coerce compliance with a court order entered primarily for the benefit of private parties to a suit, cannot be accomplished when the responsible party is [presently] unable, for whatever reason, to comply"); *Rutherford v. Rutherford, supra,* 296 Md. at 357, 464 A.2d at 233 (Civil contempt adjudications were reversed because, *inter alia,* "the trial judges found that the defendants lacked a present ability to comply with the . . . orders"); *Elzey v. Elzey,* 291 Md. 369, 374, 435 A.2d 445, 447–448 (1981) ("In all civil contempt proceedings, any order imposing a penalty upon the defendant must contain a purging provision with which the defendant has the ability to comply. * * * Moreover, the issue is not the ability to pay at the time the payments were originally ordered; instead, the issue is his *present* ability to pay").

In fact, and wholly apart from the sanction, normally in a constructive civil contempt action there cannot even be a finding or adjudication that the defendant is in contempt unless the defendant has the *present* ability to comply with the earlier court order or with the purging provision. *Ott v. Frederick County, supra,* 345 Md. at 689, 694 A.2d at 105;

*Lynch v. Lynch, supra,* 342 Md. at 520–529, 677 A.2d at 589–594. The only exception to this general rule is set forth in Maryland Rule 15–207(e), which permits a finding of contempt, and the issuance of certain court orders, where a defendant has failed to comply with spousal or child support orders under conditions specified in the Rule. *See Wilson v. Holliday,* 364 Md. 589, 774 A.2d 1123 (2001); *Rawlings v. Rawlings, supra,* 362 Md. at 544–561, 766 A.2d at 103–112; *Jones v. State, supra,* 351 Md. at 272–276, 718 A.2d at 226–228; *Ott v. Frederick County, supra,* 345 Md. at 684 n. 2, 694 A.2d 101 (majority opinion), 689–691, 694 A.2d 101 (concurring opinion), 694 A.2d at 102 n. 2 (majority opinion), 105–106 (concurring opinion). By its terms, Rule 15–207(e) is not applicable under the facts of the present case.

■ It is obvious that the Circuit Court's order in the present case cannot be reconciled with the above-described nature of a constructive civil contempt action under Maryland law. The purpose of this proceeding and of the Circuit Court's order was not to coerce the defendant's present or future compliance with the earlier *pendente lite* order.

The civil contempt order in the case at bar contained no purging provision. James Dodson had no *present* ability to comply with any requirement that the insurance premium due on November 1, 2000, be paid so that there would be no December 2000 cancellation of the insurance policy on the condominium's contents. There has been no suggestion in this case that James Dodson is presently failing to pay any insurance premiums which he is obligated to pay or that he has failed to pay any such premiums since December 2000.

Unlike every other case in this Court which has upheld a constructive civil contempt sanction, this case involves no current obligation under a court order. Instead, the only failure to comply with a court order was a single episode of inaction which took place in the fall of 2000. The direct adverse result, namely the cancellation of the insurance policy, was a one-time event in December 2000, and it is over with.

It is not possible to reinstate the insurance policy retroactive to December 2000 when the fire occurred.

■ The purpose of Amelia Dodson's civil contempt action was to impose a sanction upon James Dodson for a past failure to comply with a court order. This Court has consistently held that a civil contempt action will not lie for such purpose. *See, e.g., Lynch v. Lynch, supra,* 342 Md. at 529, 677 A.2d at 594; *Rutherford v. Rutherford, supra,* 296 Md. at 357, 464 A.2d at 233; *Elzey v. Elzey, supra,* 291 Md. at 375–376, 435 A.2d at 448; *State v. Roll and Scholl, supra,* 267 Md. at 728, 730, 298 A.2d at 876, 877. Under the circumstances of our prior cases, we have pointed out that a constructive criminal contempt action is the appropriate means to punish a past willful violation of a court order. Under circumstances like those in the case at bar, a tort action sounding in negligence or a breach of contract action would be the appropriate means for the injured party to seek compensation.

## B.

There are additional reasons for not allowing compensatory damages, based upon a past negligent failure to comply with a court order, to be recovered in a civil contempt action.

■ Under settled Maryland law, one may not be held in contempt of a court order unless the failure to comply with the court order was or is willful. A negligent failure to comply with a court order is simply not contemptuous in a legal sense. This is true of civil contempt as well as criminal contempt. *Rawlings v. Rawlings, supra,* 362 Md. at 544, 766 A.2d at 103 ("The contemnor may ... defend by establishing, by a preponderance of the evidence, 'that the failure to pay was not an act of willful or contumacious non-compliance' "); *Ashford v. State,* 358 Md. 552, 572, 750 A.2d 35, 46 (2000); *Jones v. State, supra,* 351 Md. at 273, 718 A.2d at 227 (A showing that the failure to comply with the court order "was not an act of willful or contumacious non-compliance" is a defense in a civil contempt action); *Lynch v. Lynch, supra,* 342 Md. at 523, 677 A.2d at 591 (" '[A]n unintentional inability to pay precludes [a

sanction] for either civil or criminal contempt' "); *Rutherford v. Rutherford, supra,* 296 Md. at 364, 464 A.2d at 237 ("[C]ontempt is the *refusal* to comply with the court order, and not merely the breach of the prior support agreement") (emphasis added). Furthermore, this Court has taken the position that a civil contempt adjudication, even though it is for a coercive purpose, "labels the defendant a contemnor and imputes guilt to him or her." *Lynch v. Lynch, supra,* 342 Md. at 529, 677 A.2d at 594. An adjudication of civil contempt, based upon mere negligent inaction and not upon willful conduct, is flatly inconsistent with the above-cited cases.

■ This litigation, although labeled a civil contempt action, was in essence a tort suit for money damages based upon James Dodson's alleged negligent inaction. Under Articles 5 and 23 of the Maryland Declaration of Rights, a party in a tort suit for money damages exceeding $10,000.00 is entitled to a jury trial. A party in a civil contempt action, however, is not entitled to a jury trial. *Harryman v. State,* 359 Md. 492, 508–509, 754 A.2d 1018, 1027 (2000); *Whitaker v. Prince George's County,* 307 Md. 368, 387–388, 514 A.2d 4, 14–15 (1986).

James Dodson requested a jury trial in the present case, but the request was denied on the ground that this was a civil contempt action. If we were to affirm the judgment below, we would be allowing the state constitutional jury trial right to be circumvented simply by the label which a plaintiff attaches to a lawsuit. Nevertheless, we have consistently refused to permit circumvention of the right to a jury trial by attaching a particular label to a court action. *See, e.g., Martin v. Howard County,* 349 Md. 469, 488–489, 709 A.2d 125, 135–136 (1998) ("[N]either the titles of [the] complaints nor the labels attached . . . determine whether the action is essentially legal or equitable" for purposes of the right to trial by jury. The plaintiff's "repeated reliance on the label given" does not determine the jury trial right. "If the plaintiff requests money damages . . . there is a constitutional right to a jury trial").

Other substantive or procedural rights of a defendant could be circumvented by allowing the use of a civil contempt action to recover compensatory damages based on the defendant's alleged negligence. For example, a defendant is entitled to raise contributory negligence as a defense in a tort action sounding in negligence, but contributory negligence has never been deemed a defense in a civil contempt case. In a circuit court tort action, the defendant is entitled to filed counter-claims, cross-claims, or third party claims under Maryland Rules 2–331 and 2–332; there is no rule or Maryland prece-dent explicitly allowing such claims in a contempt action. If the present case had been brought as a tort action, James Dodson may well have been able to convince a jury that the plaintiff was contributorily negligent or that the negligence of the insurance agency was a proximate cause of the property damage.

## C.

In summary, we hold that compensatory damages may not ordinarily be recovered in a civil contempt action. The Court of Special Appeals' decision in *Jones v. Wright*, *supra*, 35 Md.App. 313, 370 A.2d 1144, relied on by the courts below, is inconsistent with this holding and is overruled. Furthermore, we specifically hold that compensatory damages may never be recovered in a civil contempt action based upon a past negligent act by the defendant. This case does not present the issue of whether, under exceptional circumstances, a willful violation of a court order, clearly and directly causing the plaintiff a monetary loss, could form the basis for a monetary award in a civil contempt case. We shall leave the resolution of that question for another day.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AND REMAND THE CASE TO THE CIRCUIT COURT WITH DIRECTIONS TO DISMISS THE PLAINTIFF'S PETITION. COSTS IN THIS COURT*

*AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE PLAINTIFF–RESPONDENT AMELIA C. DODSON.*