23 A.3d 236

**Robert E. GERTZ**

v.

**MARYLAND DEPARTMENT OF the ENVIRONMENT.**

**No. 1090, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

July 1, 2011.

414

416

Gregory J. Swain, Annapolis, MD, for appellant.

Jacqueline S. Russell (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, MD, for appellee.

Panel: MATRICCIANI, KEHOE, JAMES A. KENNEY, III (Retired, Specially Assigned), JJ.

JAMES A. KENNEY, III (Retired, Specially Assigned), J.

This appeal is the latest chapter in a decades-long environmental saga involving landfill operations conducted at property owned by Robert E. Gertz, appellant, on Saint Stevens Church Road in Anne Arundel County (the Site). After finding that Gertz willfully violated a prior contempt order requiring closure of his landfill in accordance with specified deadlines and regulations, the Circuit Court for Anne Arundel County entered a second contempt judgment against Gertz. The court imposed a fine of $50,000 as a stipulated penalty stemming from the prior contempt order, plus an additional $22,000 that it suspended on the condition that Gertz complies with future inspection and monitoring requirements. Gertz appeals this contempt judgment, presenting the following three slightly revised questions for our review:

I. Whether the circuit court erred in finding him in constructive civil contempt and imposing sanctions for his past failure to comply with a court order?

II. Whether the circuit court erred by finding him in constructive civil contempt and by failing to specify how the contempt may be purged?

III. Whether the circuit court erred in finding that a delay in complying with the Court Order dated January 7, 2004, was a willful violation of a court order warranting a finding of contempt and a $72,000 fine?

We conclude that there is sufficient evidence to support the challenged contempt finding and that the court did not err or abuse its discretion in imposing the fine. In particular, we agree with appellee, the Maryland Department of the Environment (MDOE), that the $50,000 fine was imposed pursuant to the prior contempt order, in which Gertz consented to the imposition of a penalty if he failed to comply with specified closure deadlines, and that the $22,000 suspended fine is

subject to a clear purge provision. Accordingly, we shall affirm the judgment.

## FACTS AND LEGAL PROCEEDINGS

According to MDOE records, beginning in 1984, Gertz began to accept, in exchange for payment, truckloads of organic material, primarily consisting of debris from land-clearing, such as tree stumps, other plant material, and dirt. Gertz ground up the debris and spread it over the Site, claiming that no permit was required because he was merely creating pasture for his horses or composting, and that this activity was "grandfathered" as a "preexisting use." By December 15, 1997, MDOE had notified Gertz that a permit was necessary for such operations. Nevertheless, Gertz continued to accept such material without a permit.

In June 2000, MDOE filed a complaint in the Circuit Court for Anne Arundel County, alleging that the Site, as utilized by Gertz, constituted an open dump, landfill, landfill system, refuse disposal system, or solid waste acceptance facility. MDOE sought a fine of $400,000 against Gertz for operating the facility without a permit and in violation of applicable environmental regulations. On January 4, 2001, the court preliminarily enjoined Gertz from accepting waste at the Site.

On May 23, 2002, after MDOE's complaint was fully litigated, the court issued a memorandum opinion finding that Gertz had "knowingly, willfully, and unabatedly operated," "without the required permit, a solid waste acceptance facility and/or a refuse disposal system for public use[.]" An accompanying order "permanently enjoined [Gertz] from conducting the solid waste acceptance facility/refuse disposal system ... until he obtain[ed] the necessary permit." This order, which we will refer to as the 2002 Injunction, imposed a $110,925 civil fine for these environmental violations and further provided that if Gertz did not have a permit within three months, he would have to close the facility in accordance with applicable regulations. Specifically, the 2002 Injunction stated that Gertz

must implement the land fill closure procedures of COMAR 26.04.07.21 if, within three (3) months of this Order, he is unable or refuses to secure the necessary permit to continue operating his site. If [Gertz] does not receive a permit in the allotted time, he must complete the aforementioned landfill closure procedures within six (6) months from the date of this Order[.]

MDOE was granted "continuing access" to the Site "until [Gertz] secure[d] the necessary permit or complete[d] the closure procedures[.]"

Gertz thereafter elected not to obtain a permit and ceased operations, but he did not comply with the closure requirements in the 2002 Injunction. As a result, MDOE returned to court seeking enforcement of those provisions.

By January 8, 2004, Gertz had consented to closure of the facility under terms that were spelled out in an order of contempt, which we shall refer to as the 2004 Contempt Order. In that order, the court found that Gertz willfully violated the 2002 Injunction and imposed new deadlines for closing the facility in accordance with applicable regulations. Gertz was obligated, *inter alia*, to

[s]ubmit a grading plan including five copies of a sediment and erosion control plan ... in compliance with Article 21 of the Anne Arundel County Code within 3 months of the date of [the 2004 Contempt Order], to be approved by the County with a copy of the plan to [MDOE]. Such plan shall be in conformance with closure requirements for landfills as found in COMAR 26.04.07.21.01 and the sediment and control regulations, Title 4, of the Environment Article and COMAR 26.17.01.

The 2004 Contempt Order further required that within 30 days after the grading plan was approved, Gertz had to submit a plan for closing the facility and that "closure shall be completed pursuant to an approved schedule but in any case shall be completed within 90 days of approval of the plan[.]"

To enforce these deadlines, the 2004 Contempt Order provided that Gertz "shall pay a stipulated penalty to [MDOE] of

at least $10,000 for any violation of the deadlines and terms of this Order of Contempt." Payment of such a penalty was required "upon demand by [MDOE]" and was payable "to the Clean Water Fund administered by [MDOE]."

Over the next five years, a series of events culminated in a second contempt order against Gertz, followed by this appeal. After the 2004 Contempt Order, Gertz hired an engineering firm to develop a grading and closure plan that complied with applicable regulations. On April 7, 2004, the last day of the three month deadline set in the 2004 Contempt Order, Gertz filed an application for a grading permit. On May 5, 2004, the Anne Arundel County Permit Application Center (the County) notified Gertz that it would not approve the application as submitted, citing a number of deficiencies, including lack of both a storm water management plan and a down stream analysis as required by County regulations. According to Gertz's second engineer, however, it would have been unprecedented to obtain approval of an initial grading plan without such comments, revision, and re-application.

Gertz did not submit another grading plan until May 2008—a four-year delay that Gertz attributed to his engineering firm's claimed inability to obtain County approval "because they . . . were out of this County and couldn't get it through." Although the County had approved Gertz's steep slope waiver request on February 2, 2005, that approval did not prompt the filing of a revised application for a grading permit. Instead, progress toward closure of the landfill stalled until late 2007, when Gertz changed engineering firms. On May 14, 2008, that firm filed a revised grading permit application for the Site that was approved the following day.

On May 30, 2008, citing Gertz's failure to satisfy the closure deadlines in the 2004 Contempt Order, MDOE filed a petition asking that Gertz again be held in constructive civil contempt. On June 10, the court issued an order to show cause and set a hearing date, which was continued several times at both parties' requests. A grading permit was issued on August 20,

2008, and Gertz thereafter agreed to yet another timetable for closing the facility.

On February 4, 2009, the circuit court entered a Consent Order providing, *inter alia*, that by February 15, Gertz was to submit a closure plan and schedule that required capping of the landfill by March 15, 2009 and vegetative stabilization by May 1, and file a compliance report by June 1. This order, which we will refer to as the 2009 Consent Order, required twice-yearly inspection of the Site after closure, for a period of five years. In addition, it established "stipulated penalties for violations of the[se] ... deadlines, ... in the amount of $2500.00 ... each," and for continuing violations "uncured for more than two weeks" a stipulated penalty of $500 per day. Finally, the order set a hearing date of June 29, 2009, "for final review and assessment of penalties regarding [Gertz's] compliance with the [2004 Contempt Order] and the provisions of [the 2009] Consent Order."

Thereafter Gertz timely filed, and the County approved, a closure plan. By the time of the June 29 hearing, Gertz had performed all the grading and other required closure work.

At the June 29 hearing, after hearing testimony and argument, the court found that Gertz willfully violated the terms of the 2004 Contempt Order; ordered him to pay a fine of $72,000, with $22,000 of that amount "suspended contingent on [Gertz] complying with the Court Order." The court further required twice-yearly inspections for five years following closure and regular methane gas monitoring. On July 21, the court entered an order and judgment in accordance with its bench ruling. We shall refer to this as the 2009 Contempt Order.

We shall include additional facts as they pertain to our discussion of the issues.

## DISCUSSION

Gertz challenges the 2009 Contempt Order on multiple grounds. After reviewing the law governing review of contempt orders, we shall address each of his complaints in turn.

## Standards Governing Review Of Contempt Orders

"[I]t is beyond cavil that 'the power to hold a person in contempt is inherent in all courts as a principal tool to protect the orderly administration of justice and the dignity of that branch of government that adjudicates the rights and interests of the people.' " *Usiak v. State*, 413 Md. 384, 395, 993 A.2d 39 (2010). Thus, a person subject to a court order may be held in contempt for willfully violating that order. *Dodson v. Dodson*, 380 Md. 438, 452, 845 A.2d 1194 (2004). The violation must be intentional; it is not enough that it result from the alleged contemnor's negligence. *Id.* "When a court . . . makes a finding of contempt, the court shall issue a written order that specifies the sanction imposed for the contempt." Md. Rule 15–207(d)(2). The distinctions between civil and criminal contempt are important. *See Dodson*, 380 Md. at 448, 845 A.2d 1194. For example, in contrast to criminal contempt, which must be proved beyond a reasonable doubt, civil contempt may be proven by a preponderance of the evidence. *See Royal Inv. Group, LLC v. Wang*, 183 Md.App. 406, 448, 961 A.2d 665 (2008), *cert. dismissed*, 409 Md. 413, 975 A.2d 875 (2009). For purposes of this appeal, the distinction between the two of particular importance is that, "whereas imposing a sanction for past misconduct is the function of criminal contempt," "the purpose of civil contempt is to coerce present or future compliance with a court order[.]" *Id.* For this reason, a civil contempt order may not "impose a sanction upon [the contemnor] for a past failure to comply with a court order." *Id.* at 452, 961 A.2d 665. Rather, a civil contempt order is "remedial in nature" in the sense that it is "intended to coerce future compliance" with court orders that "preserve and enforce the rights of . . . parties to a suit[.]" *Dodson*, 380 Md. at 448, 845 A.2d 1194 (quoting *State v. Roll and Scholl*, 267 Md. 714, 728, 298 A.2d 867 (1973)). "Thus, the penalty in a civil contempt action must provide for purging." *Id. See also* Md. Rule 15–207(d)(2) ("In the case of a civil contempt, the order shall specify how the contempt may be purged.") The court, in the exercise of its civil contempt power, may make "ancillary orders for the purpose of facilitat-

ing compliance or encouraging a greater degree of compliance with court orders." *Dodson,* 380 Md. at 448, 845 A.2d 1194; *see Royal Inv. Group,* 183 Md.App. at 447, 961 A.2d 665. An appellate court may reverse a finding of civil contempt only " 'upon a showing that a finding of fact upon which the contempt was imposed was clearly erroneous or that the court abused its discretion in finding particular behavior to be contemptuous.' " *Royal Inv. Group,* 183 Md.App. at 448, 961 A.2d 665 (citation omitted). *See Espinosa v. State,* 198 Md. App. 354, 399–400, 17 A.3d 754 (2011). The distinctions between civil and criminal contempt are important. *See Dodson,* 380 Md. at 448, 845 A.2d 1194. For example, in contrast to criminal contempt, which must be proved beyond a reasonable doubt, civil contempt may be proven by a preponderance of the evidence. *See Royal Inv. Group, LLC v. Wang,* 183 Md.App. 406, 448, 961 A.2d 665 (2008), *cert. dismissed,* 409 Md. 413, 975 A.2d 875 (2009). For purposes of this appeal, the distinction between the two of particular importance is that, "whereas imposing a sanction for past misconduct is the function of criminal contempt," "the purpose of civil contempt is to coerce present or future compliance with a court order[.]" *Id.* For this reason, a civil contempt order may not "impose a sanction upon [the contemnor] for a past failure to comply with a court order." *Id.* at 452, 961 A.2d 665. Rather, a civil contempt order is "remedial in nature" in the sense that it is "intended to coerce future compliance" with court orders that "preserve and enforce the rights of ... parties to a suit[.]" *Dodson,* 380 Md. at 448, 845 A.2d 1194 (quoting *State v. Roll and Scholl,* 267 Md. 714, 728, 298 A.2d 867 (1973)). "Thus, the penalty in a civil contempt action must provide for purging." *Id. See also* Md. Rule 15–207(d)(2) ("In the case of a civil contempt, the order shall specify how the contempt may be purged.") The court, in the exercise of its civil contempt power, may make "ancillary orders for the purpose of facilitating compliance or encouraging a greater degree of compliance with court orders." *Dodson,* 380 Md. at 448, 845 A.2d 1194; *see Royal Inv. Group,* 183 Md.App. at 447, 961 A.2d 665. An appellate court may reverse a finding of civil contempt only

" 'upon a showing that a finding of fact upon which the contempt was imposed was clearly erroneous or that the court abused its discretion in finding particular behavior to be contemptuous.' " *Royal Inv. Group,* 183 Md.App. at 448, 961 A.2d 665 (citation omitted). *See Espinosa v. State,* 198 Md. App. 354, 399–400, 17 A.3d 754 (2011).

## I.

## Gertz's Complaint That The 2009 Contempt Order Impermissibly Sanctions His Past Failure To Comply With The 2004 Contempt Order

 Gertz argues that "the circuit court erred in finding [him] in constructive civil contempt and imposing sanctions for [his] past failure to comply with a court order." According to Gertz, "the court based its findings on events that had already occurred; namely, the four year delay between submission of the original grading plan in 2004 and a submission of a revised plan in 2005," which the court attributed to him. In his view, "[t]he Court's finding of civil contempt based solely on [his] past conduct" violated the rule that civil contempt "proceedings are generally remedial in nature and are intended to coerce future compliance." *See Dodson,* 380 Md. at 448, 845 A.2d 1194.

We are not persuaded by Gertz's contention that the court erred in premising its civil contempt finding on his past failure to close the landfill in accordance with the deadlines set in the 2004 Contempt Order. To the contrary, the court's threshold task in adjudicating MDOE's latest contempt complaint was to decide whether Gertz's "past conduct" violated the 2004 Contempt Order. *Cf. Fisher v. McCrary Crescent City, LLC,* 186 Md.App. 86, 114, 120, 972 A.2d 954 (2009) (In constructive civil contempt proceedings, the court must determine by a preponderance of the evidence whether a contemptuous act occurred.), *cert. denied,* —— U.S. ——, 131 S.Ct. 637, 178 L.Ed.2d 476 (2010).

 Gertz further complains that because he had already closed the landfill before the 2009 Contempt Order was issued,

the $72,000 fine "was not meant to coerce compliance with a court order but to 'impose a sanction' on Gertz for a past failure to comply with the court order." MDOE responds that "the circuit court properly assessed penalties against Mr. Gertz for violation of the 2004 Contempt Order because the penalty was a sanction designed to coerce compliance with [that] order and provided for purging." We agree.

Although the court set the amount of the penalty for failure to comply with the 2004 Contempt Order at $72,000, it explained that it would "suspend a portion of that as a final incentive for Mr. Gertz to complete the work that remains to be completed under the February 2009 order," which requires regular methane monitoring and Site inspections over a period of five years. In the ensuing order, the court directed that $22,000 of the fine "shall be suspended contingent on [Gertz's] full compliance with [the February 2009 Consent] Order and within the time frames set forth" therein. With respect to the remaining "$50,000 non-suspended penalty," the court explained in its bench ruling that "the parties in the consent order from 2004 had agreed that it would be a minimum penalty . . . . of $10,000" and that a fine in the range of $50.00 per day or $1,500.00 per month would serve as a "lesson to the public to deter other people from similar violations[.]" In accordance with the 2004 Contempt Order, the court ordered Gertz to make payment of this amount "to the 'Maryland Clean Water Fund[.]' "

In our view, because it was subject to suspension by Gertz's compliance with the inspection and monitoring requirements in the 2009 Contempt Order, the $22,000 portion of the $72,000 penalty clearly qualifies as a remedial sanction designed to compel future compliance. The court gave Gertz an opportunity to avoid payment of this amount by complying with these easily satisfied obligations. Therefore, this portion of the contempt sanction is both remedial and capable of being purged. *See, e.g., Bryant v. Howard County Dep't of Soc. Servs.,* 387 Md. 30, 46, 874 A.2d 457 (2005) (A contempt sanction can be purged if it permits the contemnor "to avoid

the penalty by some specific conduct that is within its ability to perform.").

■■■ As for the remaining "non-suspended" $50,000 penalty, Gertz directs his argument to the court's statement that "a fine in the neighborhood of $50 per day or $1,500 per month" would serve as a deterrent to the public, indicating that the penalty merely sanctioned Gertz's past misconduct. Although the court's comments regarding deterrence may appear to reflect the often blurred distinction between criminal and civil contempt, the sanction imposed by the court does not alter the civil nature of this particular contempt proceeding. *See, e.g., State v. Roll and Scholl,* 267 Md. 714, 728, 298 A.2d 867 (1973) (holding that the criminal or civil nature of a contempt proceeding is established at its outset, not by the type of sanction ultimately imposed).

The 2009 Contempt Order stemmed from MDOE's petition for civil contempt to enforce the 2004 Contempt Order, which, in turn, resulted from MDOE's civil contempt petition to enforce the 2002 Injunction, and which itself was the result of a civil enforcement action initiated by MDOE. *See* Md.Code, § 9–342(a) of the Environment Article ("In addition to being subject to an injunctive action under this subtitle, a person who violates any provision of this subtitle or of any rule, regulation, order, or permit adopted or issued under this subtitle is liable to a civil penalty not exceeding $ 10,000, to be collected in a civil action brought by the Department. Each day a violation occurs is a separate violation under this subsection.").

It is undisputed that this monetary sanction was authorized in the 2004 Contempt Order as a remedial incentive for Gertz to comply with the closure requirements in that order. Indeed, as stated in the 2004 Contempt Order, Gertz agreed to pay "a stipulated penalty of at least $10,000 for any violation of" the deadlines specified therein. Thus, even though it was ultimately imposed in the 2009 Contempt Order, that sanction had its genesis in the 2004 Contempt Order and could have been avoided by Gertz submitting timely grading and closure

plans. Having consented to a penalty for failing to comply with the deadlines set in the 2004 Contempt Order, with the dollar amount to be determined in the future, Gertz cannot now complain that the penalty was imposed when he failed to comply. *Cf., e.g., From the Heart Church Ministries, Inc. v. Philadelphia–Baltimore Annual Conference,* 184 Md.App. 11, 48, 964 A.2d 215 (principles of waiver and equitable estoppel preclude a party from claiming a previously relinquished right), *cert. denied,* 408 Md. 148, 968 A.2d 1064 (2009).

Gertz cites *Dodson v. Dodson* for the proposition that a civil contempt order cannot be imposed as "a sanction ... for a past failure to comply with a court order." *See Dodson,* 380 Md. at 452, 845 A.2d 1194. In *Dodson,* an ex-husband violated a court order to pay property insurance, which resulted in financial losses for his ex-wife when a fire damaged the uninsured property. *Id.* at 444, 845 A.2d 1194. The Court of Appeals vacated a civil contempt order requiring the ex-husband to pay compensatory damages to reimburse his ex-wife, because the purpose of that order was not "to coerce the [contemnor's] present or future compliance with the earlier ... order," given that the order "contained no purging provision" and did not require the ex-husband to do anything other than pay money. *Id.* at 451, 845 A.2d 1194. The *Dodson* Court held that a civil contempt sanction cannot be imposed as compensation for damages caused by a contemnor's negligent violation of a court order. *Id.* at 440, 845 A.2d 1194.

*Dodson* is factually and legally inapposite here, because unlike Dodson, Gertz agreed to the imposition of a monetary sanction if he violated the court order in question; he was given ample opportunity to avoid that sanction; and he was sanctioned for willful rather than negligent conduct. Moreover, the *Dodson* monetary award compensated the victim of the contemnor's negligence for her financial losses. In this case, because no monetary losses were established, the $50,000 penalty cannot be characterized as an improper compensatory damage award.

## II.

### Gertz's Complaint That The 2009 Contempt Order Lacks A Purge Provision

Gertz's second complaint is that the court "erred in failing to specify how [he] could purge the civil contempt and fine." That omission, he contends, is a reversible error of law. (Ant.14) *See* Md. Rule 15–207(d)(2); *Fisher*, 186 Md.App. at 126, 972 A.2d 954 (vacating civil contempt order precluding party from participating in damages hearing because it was not written and did not contain a purge provision). Again, we do not agree.

For the reasons explained in Part I, we conclude that both the $22,000 suspended penalty and the $50,000 penalty were subject to purge provisions. As discussed above, Gertz was given the opportunity to avoid both of these payments through specified conduct that he had the ability to perform. *See Bryant*, 387 Md. at 46, 874 A.2d 457. Although he failed to avoid the stipulated penalty by complying with the closure deadlines in the 2004 Contempt Order, he can still avoid the $22,000 penalty by complying with the inspection and monitoring requirements in the 2009 Contempt Order.

Gertz's reliance on *Fisher v. McCrary Crescent City LLC*, 186 Md.App. 86, 972 A.2d 954, for the proposition that the $50,000 fine does not contain a purge provision, is misplaced. There, we vacated a civil contempt ruling that a party who had violated the terms of a temporary restraining order could not participate in a damages hearing, reasoning that the court had improperly converted the civil contempt proceeding into a criminal contempt proceeding because the contempt order was not in writing and did not include a purge provision, both of which are essential elements of a civil contempt order. *Id.* at 131–33, 972 A.2d 954. Unlike the contempt order in *Fisher*, the contempt provisions challenged by Gertz did not preclude him from participating in any phase of the proceedings, they were in writing, and they permitted Gertz to avoid the sanctions he now challenges.

## III.

### Gertz's Complaint That The Court Erred In Finding That He Willfully Violated The 2004 Contempt Order Warranting A $72,000 Fine

In his final assignment of error, Gertz challenges the substance of the 2009 Contempt Order on three additional grounds. We shall address—and reject—each argument.

### A.

### Willfulness Finding

Gertz contends that the circuit court erred in finding that his four-year delay in submitting a revised grading plan and a closure plan for the Site constituted a willful violation of the 2004 Contempt Order. According to Gertz, "[w]hile an argument could be made that [he] had been negligent by not insisting on more timely progress" from his first engineering consultant, "there was no evidence that the delay was the result of any 'willful' act" by him.

We review factual findings upon which a contempt order is premised to determine if they are clearly erroneous. *See Royal Inv. Group*, 183 Md.App. at 448, 961 A.2d 665. It is not our task to re-weigh the credibility of witnesses, resolve conflicts in the evidence, or second-guess reasonable inferences drawn by the court, sitting as fact-finder. Rather, the evidence and all inferences drawn therefrom must be viewed in the light most favorable to MDOE, as the prevailing party, and the sole issue is whether the evidence, so viewed, is sufficient to support the court's finding of willfulness. *See id.* at 430, 961 A.2d 665; *Espinosa*, 198 Md.App. at 399, 17 A.3d 754.

In a contempt proceeding, "[w]illful conduct is action that is '[v]oluntary and intentional, but not necessarily malicious.'" *Royal Inv. Group*, 183 Md.App. at 451, 961 A.2d 665 (quoting *Black's Law Dictionary* 1630 (8th ed.2004)). In the context of an environmental enforcement action, "the willful-

ness of a violation" of an order is considered in terms of "the extent to which the existence of the violation was known but uncorrected by the violator, and the extent to which the violator exercised reasonable care." Md.Code, § 9–342(b)(2)(ii)(1) of the Environment Article.

"[E]vidence of an ability to comply, or evidence of a defendant's conduct purposefully rendering himself unable to comply, may, depending on the circumstances, give rise to a legitimate inference that the defendant acted with the requisite willfulness and knowledge." *Dorsey and Craft v. State,* 356 Md. 324, 352, 739 A.2d 41 (1999); *see Fisher,* 186 Md.App. at 122, 972 A.2d 954. *Cf., e.g., Att'y Grievance Comm'n v. Boyd,* 333 Md. 298, 309, 635 A.2d 382 (1994) ("willfulness may be established merely by proof of a voluntary, intentional violation of a known legal duty"). Thus, the willfulness of an alleged contemnor's violation of a court-ordered duty to undertake environmental remediation may be shown by his or her failure to perform that remediation despite the ability and opportunity to do so.

The court drew such an inference of willfulness in this case. After Gertz's initial grading permit application in May 2004 was rejected, with comments about deficiencies to be corrected, he did not submit a revised plan until four years later. To be sure, Gertz testified that, during that four-year interval, he relied on his engineering consultant to resolve the deficiencies, and that when that firm did not obtain the grading permit, he hired a replacement consultant who eventually succeeded in securing the necessary approvals from the County. But after hearing testimony from Gertz, his engineer, and MDOE officials, the court was not persuaded that this lengthy delay resulted from mere inattention or negligence on Gertz's part.

Instead, the court expressly found that "it was a willful allowing of the time to pass and disregard for the order which gets me to that finding of willfulness." Specifically, the court inferred from the evidence that Gertz's delay in revising and re-submitting an approvable grading plan resulted from his

deliberate strategy of putting off compliance with the 2004 Contempt Order as long as possible:

> It does seem to me that in 2004 in that order of contempt that was produced after a hearing before the Court, the Court had found Mr. Gertz was in contempt and . . . counsel had in effect stipulated that . . . as a result of an agreement in chambers.
>
> This is what is reasonable, how to purge this contempt. That there would be a grading plan submitted. That that ought to be something that could be submitted within 90 days and that . . . after approval, the work should be done and closure should be completed within 90 days. . . .
>
> So, to me that sets a time frame that you should be able to apply for the permit within 90 days. Whenever the permit is approved, you should be able to complete the work within 90 days.
>
> Mr. Gertz knew that it was serious enough that he had been fined substantially in the past over $100,000. . . .
>
> So, he knew the seriousness and he by his own testimony goes out and hires the first engineering firm, sees that they have put in a plan, sees that the plan is not getting anywhere.
>
> As of at least some time in mid 2004 the plans appear to be stuck and he makes a little more progress to the beginning of 2005. But again, his testimony is that from that time until he eventually goes to see the new engineering firm in late 2007 that he is not actively working on the property himself.
>
> He knows that this order from 2004 is in effect and what he does is maybe stop by in their office from time to time. I infer that maybe he is calling on them, but he has to see the clock is ticking. That the calendar is flipping past and that time is running.
>
> If this was just a situation of Mr. Gertz was kind of busy and he missed by a few months or by even a good part of a year, the Court would . . . be able to say in terms of the willfulness category of this assessment that things happen.

If you are busy, . . . and you have other things to do on your farm that the time can pass that you can just overlook it and maybe there is a little bit of negligence there which is different from willfulness.

But at a certain point, when it is not just a few months but it is years, I think that we have to say that there is a boundary that you cross somewhere between just being too busy or being negligent and being willful.

That at a certain point you have to say, he knew it was there and he just kind of thought that he could postpone it as long as he wanted to postpone it and that nothing was going to happen to him because he already had bit the bullet and incurred the fine and so he would just get around to it when he wanted to get around to it.

So, I do think that at a certain point we have to say that he has crossed that line and at exactly where that point is the Court cannot say, but I do think it would be difficult for reasonable minds to differ to say that three to four years is too long when your original deadline was 90 days plus the permit approval time plus another 90 days.

There is ample evidence to support the inference of willfulness drawn by the court. The record shows that after the County advised Gertz in May 2004 that additional matters, including stormwater management, would have to be addressed via a revised grading plan, the project stalled. Gertz testified that he "went down" to the engineering firm's office "five different times . . . to tell them I had to have it done," but admitted that he did nothing else to move the closure work along until late 2007 (more than three years after the closure deadline set in the 2004 Contempt Order), when he finally switched engineering firms. Given the significant history of enforcement actions necessitated by Gertz's violation of environmental regulations and Gertz's own testimony that he only occasionally stopped by his engineer's office, the circuit court was entitled to infer that Gertz deliberately dragged his feet in submitting a revised grading plan and a closure plan, with a defiant attitude that "he would just get around to it when he wanted to get around to it." Accordingly, the court's

finding that Gertz willfully violated the 2004 Contempt Order is not clearly erroneous.

## B.

### Amount Of The Fine

 Gertz next challenges the $72,000 penalty as "grossly excessive and not justified by the facts of this case." He argues that it is

> disproportionate to the gravity of the perceived offense and thus excessive in violation of Gertz's constitutional protection against excessive fines under the Eighth Amendment to the United States Constitution ... as well as Article 24 of the Maryland Declaration of Rights.

In support, he points out that he has not earned income from the landfill since operations were first enjoined in 2001, and that the court conceded that his delay in complying with the closure deadlines in the 2004 Contempt Order did not cause any harm to the environment.

We find no error or abuse of discretion in the court's decision to impose a penalty of $72,000. The court selected this amount after considering several relevant factors, one of which was the mitigating fact that Gertz's delay in closure apparently did not harm the environment. Another factor was that the sanction might serve as "a lesson to the public to deter other people from similar violations." In calculating an amount to serve that purpose and to deter further violations by Gertz, the court pointed out that Gertz had agreed in the 2004 Contempt Order to "a minimum penalty of $10,000," and that he further agreed in the 2009 Consent Order to "stipulated penalties for violations of deadlines of $2,500 for three deadlines," which the court calculated to be a penalty of approximately "$1,500 per month." Because this "range of fines, $1,500 per month," had provided sufficient financial incentive for Gertz to finally comply with the closure requirements, the court concluded that this rate would be a reasonable future deterrent. It then determined that Gertz had not been "actively ... pursuing" compliance with the 2004 Con-

tempt Order for a 48 month period (i.e., from March 2005, after Gertz had received the steep slope waiver so that "he could have been moving forward" with closure at that point, until he resumed compliance efforts in connection with the 2009 Consent Order). The resulting penalty of $72,000 represents the sum of $1,500 per month for those 48 months.

We reject Gertz's contention that this amount was "grossly excessive." Under the 2004 Contempt Order, Gertz stipulated that the court had discretion over the amount of the fine imposed, subject to the $10,000 minimum. Moreover, the court articulated a reasonable rationale for arriving at the amount of the penalty. In particular, the court's use of a monthly rate of $1,500 based on the amount that Gertz agreed would be reasonable if he violated the 2009 Consent Order, was patently reasonable. Furthermore, as discussed in Part II, payment of $22,000 out of the total $72,000 penalty can be avoided simply by complying with the inspection and monitoring requirements in the 2009 Contempt Order.

### C.

#### Inspection And Monitoring Requirements

In his final challenge to the 2009 Contempt Order, Gertz complains that the court exceeded its contempt powers by requiring the property to be inspected for five years after closure and to be regularly monitored for methane gas. In his view, because there was nothing in the 2002 Order, the 2004 Contempt Order, or applicable COMAR regulations obligating Gertz to conduct such inspections and monitoring, the court erred in mandating them.

Gertz is mistaken because he agreed to the very requirements he now challenges. Specifically, in the 2009 Consent Order, Gertz stipulated to twice-yearly post-closure inspections for a period of five years and that he would "conduct monitoring for methane within 30 days of execution of this Order, followed by quarterly monitoring for a year," and that he would thereafter "conduct any additional monitoring required by [MDOE]." Moreover, to the extent that the 2009

Contempt Order requires inspection or monitoring over and above what is covered by the 2009 Consent Order, the court had authority to impose such requirements as "ancillary orders for the purpose of facilitating compliance or encouraging a greater degree of compliance with court orders." *Dodson*, 380 Md. at 448, 845 A.2d 1194. Accordingly, the court did not exceed its power when it included inspection and monitoring requirements in the 2009 Contempt Order.

### Conclusion

Finding no error or abuse of discretion in the 2009 Contempt Order, we shall affirm it.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**